In the Matter of the Application of THE PEOPLE OF THE STATE OF NEW YORK, by GEORGE S. VAN SCHAICK, as Superintendent of Insurance, Respondent, for an Order to Take Possession of the Property of the TITLE AND MORTGAGE GUARANTEE COMPANY OF BUFFALO.

MARINE TRUST COMPANY OF BUFFALO et al., Appellants. (Three Proceedings.)

72

(Argued February 26, 1934; decided March 20, 1934.)

*Fritz Fernow, Thomas R. Wheeler* and *Charlton G. Blair* for appellants.   Chapter 745 of the Laws of 1933 is

unconstitutional and violates the provisions of the State and Federal Constitutions. (*Hollister* v. *Stewart*, 111 N. Y. 644; *Gilfillan* v. *Union Canal Co.*, 109 U. S. 401; *Canada Southern Ry. Co.* v. *Gebhard*, 109 U. S. 527.) The order of the Special Term in the second proceeding was improper. It was based upon an unconstitutional act and must necessarily fall. (*Mechanics Bank* v. *Bank of Niagara*, 9 Wend. 410; *Fullerton* v. *National Burglar & Theft Ins. Co.*, 100 N. Y. 76; *Payne* v. *Wilson*, 74 N. Y. 348; *Matter of Ries*, 182 App. Div. 296; *Pennoyer* v. *Neff*, 95 U. S. 714; *Barnard* v. *Kobbe*, 54 N. Y. 516; *Roberts* v. *Stuyvesant Safe Deposit Co.*, 123 N. Y. 57.)

*Thurman W. Stoner* and *Henry E. Warner* for Kate E. Warner, *amicus curiæ.* Ownership of the bonds, mortgages and other property in investments of the guarantee company is vested in the certificate holders of such company. (*Jackson* v. *Blodgett*, 5 Cow. 202; *Green* v. *Hart*, 1 Johns. 580; *Merritt* v. *Bartholick*, 36 N. Y. 44; *Matter of Ries*, 182 App. Div. 296; *Matter cf Wilbur* v. *Warren*, 104 N. Y. 192; *Langdon* v. *Buell*, 9 Wend. 80; *Kortright* v. *Cady*, 21 N. Y. 343; *Payne* v. *Wilson*, 74 N. Y. 348; *Mechanics Bank* v. *Bank of Niagara*, 9 Wend. 410.) Each certificate holder owns an undivided part of the mortgage debts, and is entitled to the proceeds of such share. (*Patterson* v. *Hull*, 9 Cow. 747; *Craig* v. *Wells*, 11 N. Y. 315; *Hinckel* v. *Stevens*, 165 N. Y. 171; *Tuscarora Club* v. *Brown*, 215 N. Y. 543; *Matter of John Street*, 19 Wend. 676; *Taylor* v. *Porter*, 4 Hill, 147.) If the Insurance Law (Cons. Laws, ch. 28) applies to the certificate holders, then it is unconstitutional in impairing the obligations of contracts. (U. S. Const. art. 1, § 10, subd. 1.) If article XI of the Insurance Law is valid and affects the certificate holders, then the same, and the order of the court based thereon, will result in depriving the certificate holders of their rights and property without due process of law in violation of another constitutional

prohibition. (*N. Y. Oswego M. R. R. Co.* v. *Van Horn*, 57 N. Y. 473; *Stuart* v. *Palmer*, 74 N. Y. 183; *Weismer* v. *Village of Douglas*, 64 N. Y. 91; *Embury* v. *Conner*, 3 N. Y. 515; *City of Buffalo* v. *Neubeck*, 209 App. Div. 386.) The transfer of the title, interest and property of the certificate holders to the Superintendent of Insurance is in violation of the provision of the State Constitution that property shall not be taken except by the law of the land. (Const. of N. Y. art. 1, § 1; *Matter of John Street*, 19 Wend. 676; *Taylor* v. *Porter*, 4 Hill, 147.) Article XI of the Insurance Law is not an emergency measure. (*Sliosberg* v. *N. Y. Life Ins. Co.*, 244 N. Y. 482.)

*Alexander Rubin* for Sarah R. Heilbroner, *amicus curiæ.* The certificate holders are tenants in common, and legislation permitting an alteration of their property rights without their unanimous consent is unconstitutional. (*Matter of Albrecht*, 136 N. Y. 91; *Crippen* v. *Morss*, 49 N. Y. 63; *Valentine* v. *Healey*, 158 N. Y. 369; *Abbot* v. *American Hard Rubber Co.*, 33 Barb. 578; *Canada Southern Ry. Co.* v. *Gebhard*, 109 U. S. 527; *Gilfillan* v. *Union Canal Co.*, 109 U. S. 401; *Clearwater* v. *Meredith*, 1 Wall. [U. S.] 25; *Geddes* v. *Anaconda Mining Co.*, 254 U. S. 590; *Mason* v. *Pewabic Mining Co.*, 133 U. S. 50; *Matter of Cantor*, 261 N. Y. 6; *Colby* v. *Equitable Trust Co.*, 124 App. Div. 262.) Chapter 745 of the Laws of 1933 violates the due process provisions of the Federal and State Constitutions. (*United States Trust Co.* v. *United States Fire Ins. Co.*, 18 N. Y. 199; *Pennoyer* v. *Neff*, 95 U. S. 714; *Block* v. *Hirsh*, 256 U. S. 135; *Pana* v. *Bowler*, 107 U. S. 529.)

*Thomas C. Burke, S. Fay Carr* and *William L. Marcy, Jr.*, for George S. Van Schaick, as Superintendent of Insurance, respondent. The bonds and mortgages deposited with the depositary are the property of the guaranty company, and such deposit is a pledge for the

security of holders of guaranteed first mortgage certificates. (*Clark v. Howard*, 150 N. Y. 232; *Brown v. Bedell*, 263 N. Y. 177; *Barber v. Hathaway*, 47 App. Div. 165; 169 N. Y. 575; *Bank of Rochester v. Jones*, 4 N. Y. 497; *Campbell v. Parker*, 22 N. Y. Super. Ct. Rep. 322; *Markham v. Jaudon*, 41 N. Y. 235; *American Surety Co. v. Philippine Nat. Bank*, 245 N. Y. 116; *Appleton v. Citizens' Central Nat. Bank*, 190 N. Y. 417; 216 U. S. 196.) The Superintendent of Insurance has power to administer the deposited bonds and mortgages for the benefit of the certificate holders. As a statutory receiver, the Superintendent can, under direction of the court, charge the deposited bonds and mortgages with the expenses of their administration. (*Matter of People* [*Norske Lloyd Ins. Co.*], 242 N. Y. 148; *Lafayette Trust Co. v. Beggs*, 213 N. Y. 280; *Matter of Maxwell*, 218 N. Y. 88; *Lion Bonding Co. v. Karatz*, 262 U. S. 77.) The contract rights of the certificate holders are strengthened, not impaired, by the plan, which affords certificate holders their own remedy in administering the deposited bonds and mortgages. (*Wheeler v. Newbould*, 16 N. Y. 392; *Queen v. Fryer*, 232 App. Div. 222; *Persons v. Gardner*, 42 App. Div. 490; *Van Tuyl v. Scharmann*, 208 N. Y. 53.) The transfer of the administration of the deposited bonds and mortgages was effected by due process of law. (*Ballard v. Hunter*, 204 U. S. 241; *Jacob v. Roberts*, 223 U. S. 261; *City of New York v. Wright*, 243 N. Y. 80.) Chapter 745 of the Laws of 1933 is constitutional. (*Matter of Nemerov*, 149 Misc. Rep. 797; *Matter of Title & Mortgage Guarantee Co. of Buffalo*, 149 Misc. Rep. 643.)

*John F. Caskey* and *Clarence E. Brand* for Bond and Mortgage Guarantee Company, *amicus curiæ*. There is no impairment of the obligation of contract in compelling assent to a fair plan of reorganization. (*People ex rel. Durham Realty Corp. v. La Fetra*, 230 N. Y. 429; *Funkhouser v. Preston Co.*, 290 U. S. 163; *Broadway Trust Co.*

v. *Manheim*, 47 Misc. Rep. 415; *International Trust Co.
v. Myers*, 252 Mass. 94; 273 U. S. 380; *Cumberland Glass
Mfg. Co.* v. *DeWitt*, 237 U. S. 447; *Equitable Holding Corp.*
v. *Woody*, 63 Fed. Rep. [2d] 751; *Mitchell* v. *Clark*, 110
U. S. 633; *New York* v. *United States*, 257 U. S. 591;
*Muhlker* v. *New York & Harlem Ry. Co.*, 197 U. S. 544;
*Sauer* v. *City of New York*, 206 U. S. 536; *Noble State
Bank* v. *Haskell*, 219 U. S. 104.) The power given to the
court to approve and put into effect a plan of reorganiza-
tion which it considers fair and just, and which has been
consented to by at least two-thirds of the certificate
holders, is simply the power which courts of equity have
long exercised, limited by the new requirement of consent
of certificate holders. (*Matter of Metropolitan Ry. Co.*,
208 U. S. 90; *Burnrite Coal Briquette Co.* v. *Riggs*, 274
U. S. 208; *May Hosiery Mills Co.* v. *F. & W. Grand
Stores*, 59 Fed. Rep. [2d] 218; *Crosthwaite* v. *Moline Plow
Co.*, 298 Fed. Rep. 466; *Railroad Co.* v. *Howard*, 7 Wall.
[U. S.] 392; *Louisville Trust Co.* v. *Louisville Ry. Co.*, 174
U. S. 674; *Northern Pacific Ry. Co.* v. *Boyd*, 228 U. S.
482; *Kansas City Terminal Ry. Co.* v. *Central Union
Trust Co.*, 28 Fed. Rep. [2d] 177; 271 U. S. 445.) No
fixing of the duration of the emergency by the Legislature
is necessary. (*Luther* v. *Borden*, 7 How. [U. S.] 1; *Slios-
berg* v. *New York Life Ins. Co.*, 244 N. Y. 482; *Block* v.
*Hirsh*, 256 U. S. 135.) The requirements of the Schackno
Act as to notice to certificate holders are adequate and
comply with all constitutional requirements. (*Pennoyer*
v. *Neff*, 95 U. S. 714; *Boswell's Lessee* v. *Otis*, 9 How.
[U. S.] 336; *Matter of Empire City Bank*, 18 N. Y. 199;
*Happy* v. *Mosher*, 48 N. Y. 313; *Campbell* v. *Evans*, 45
N. Y. 356; *Matter of Union E. R. R. Co.*, 112 N. Y. 61;
*City of New York* v. *Wright*, 243 N. Y. 80.)

*William L. Marcy, Jr., S. Fay Carr* and *David L. Landy*
for Frances L. Esty, respondent. The plan does not
change or impair the pre-existing property and contract

rights of the certificate holders or the guaranty company. (*Jerome* v. *McCarter*, 94 U. S. 734; *Fidelity Ins., Trust & Safe Deposit Co.* v. *Roanoke Iron Co.*, 68 Fed. Rep. 623; *International Trust Co.* v. *Decker Bros.*, 152 Fed. Rep. 78; *Raht* v. *Attrill*, 106 N. Y. 423; *Lockport Felt Co.* v. *United Boxboard & Paper Co.*, 72 N. J. Eq. 686; *Sloman* v. *Security Trust Co.*, 248 Mich. 419.) Chapter 745 of the Laws of 1933 as applied by the plan merely modifies a remedy existing at the time the purchaser of a certificate acquired property and contract rights. (*Matter of Second Russian Ins. Co.* [*Hamburg Ins. Co.*], 219 App. Div. 46; 244 N. Y. 606; *Reed* v. *Squire*, 217 App. Div. 494; *Matter of Russian Reinsurance Co.*, 223 App. Div. 378; *Matter of Casualty Co. of America* [*Rubin*], 244 N. Y. 443; *Van Tuyl* v. *Scharmann*, 208 N. Y. 53; *Lafayette Trust Co.* v. *Beggs*, 213 N. Y. 280; *Matter of Societa* v. *Broderick*, 260 N. Y. 260; *Matter of Horowitz*, 235 App. Div. 248; *Ogden* v. *Saunders*, 12 Wheat. 213; *McCracken* v. *Hayward*, 2 How. [U. S.] 608; *Sliosberg* v. *New York Life Ins. Co.*, 244 N. Y. 482.) The provision that approval of the plan by two-thirds in amount of the certificate holders and by the court shall make the plan binding upon all holders does not deprive them of property without due process of law. (*Pocket Veto Case*, 279 U. S. 655; *Paddell* v. *City of New York*, 211 U. S. 446; *People* v. *Nebbia*, 262 N. Y. 259; *People* v. *Griswold*, 213 N. Y. 92; *People ex rel. Durham Realty Corp.* v. *La Fetra*, 230 N. Y. 429; *United States* v. *Fisher*, 2 Cranch, 359; *McCulloch* v. *Maryland*, 4 Wheat. [U. S.] 316; *Matter of Barrett & Co.*, 27 Fed. Rep. [2d] 159; *Valley* v. *Northern Fire & Marine Ins. Co.*, 254 U. S. 348.) The act is a valid exercise of the police power in a field where the public has an extraordinary interest. The guaranty company is an insurance corporation and as such is subject to the State's power over the business of insurance. (*Bowers* v. *Lawyers Mortgage Co.*, 285 U. S. 182; *United States* v. *Home Title Ins. Co.*, 285 U. S. 191; *O'Gorman & Young* v. *Hartford Ins. Co.*, 282 U. S.

251; *Matter of Bean* v. *Stoddard*, 207 App. Div. 276; *Brustein* v. *New Amsterdam Casualty Co.*, 135 Misc. Rep. 352.) The act is a valid emergency law. (*Home Loan & Building Assn.* v. *Blaisdell*, 290 U. S. 398.)

*Abraham L. Gutman. Louis F. Lee, Olin Potter Geer, Ralph W. Crolly* and *Burton A. Zorn* for Society for Ethical Culture in the City of New York, et al., *amici curiæ.*

LEHMAN, J. On August 14, 1933, an order was made and entered in the Supreme Court authorizing and directing the Superintendent of Insurance of the State of New York " forthwith to take possession of the property of the Title and Mortgage Guarantee Company of Buffalo and to conduct the business thereof in such manner and take such steps towards the removal of the causes and conditions which make necessary the granting of this order, as the Superintendent of Insurance shall consider wise, subject to the directions of the court, pursuant to the provisions of Article XI of the Insurance Law of the State of New York." The order contained the usual provisions directing the said company, its officers, directors, depositaries, trustees, agents, servants and employees and all other persons, having any property or records belonging to the said company, to deliver them to the Superintendent of Insurance and restraining the waste of assets by any person, the prosecution of actions at law, suits in equity, special or other proceeding against the company or the Superintendent of Insurance and restraining all persons from making or executing any levy upon the assets of the corporation, or from " in any way interfering with the Superintendent of Insurance of the State of New York or his successors in office in his or their possession, control and management of the property of said corporation."

The Marine Trust Company of Buffalo holds in its possession bonds and mortgages in the name of Title and

Mortgage Guarantee Company of Buffalo, which have
been deposited with it by that company under certain
written agreements. Those agreements are in, sub-
stantially, the same form. Each provides that "upon
request in writing of the President, a Vice President, the
Secretary or Treasurer of the Title & Mortgage Com-
pany, the Trust Company shall certify, authenticate and
deliver certificates from time to time in the form herein
specified to an aggregate amount equal to but in no event
exceeding, the total principal sum secured to be paid by
the bonds and mortgages held by the Trust Company or
deposited under the terms of this agreement and owing
thereon; and the Title & Mortgage Company shall be at
liberty to sell and dispose of such certificates." Certifi-
cates have been issued as provided in these agreements.
Each certificate refers to a specific agreement and the
bonds and mortgages deposited thereunder. These cer-
tificates have been sold by the Title and Mortgage
Guarantee Company. The certificates issued under each
agreement constitute a separate series. The purchasers
and holders of these certificates have, by the terms of the
certificates, acquired rights and interests in the bonds
and mortgages deposited under the particular agreement
under which that series of certificates was issued. Upon
the petition of the Superintendent of Insurance, an order
was entered on December 11, 1933, authorizing and
directing him to administer, as a separate and distinct
trust, each series of bonds and mortgages and other
securities, real estate and cash for the benefit of the holders
of the certificates issued in such series *pro rata* according
to the amounts of their respective holdings, unless their
rights be otherwise determined. In order to enable the
Superintendent to carry out this direction, the depositary
of the bonds and mortgages, The Marine Trust Company,
is authorized and directed, upon requisition of the Super-
intendent of Insurance, as rehabilitator, to deliver to
him deposited bonds and mortgages "for the purpose of

foreclosing same or accepting deeds in lieu of fore-
closure," and also for other purposes, such as " enabling
said Rehabilitator either to assign or satisfy the same,"
or for the purpose of carrying out a compromise. Other
orders have been made in regard to specific bonds and
mortgages which supplement the general order directing
the administration of the deposited bonds and mortgages.
By order dated January 8, 1934, a " plan promulgated by
* * *, Superintendent of Insurance of the State of
New York, for the reorganization of the rights of the
holders of mortgage investments known as Series R of
Title & Mortgage Guarantee Co. of Buffalo " was
approved by the court. That plan was approved in
writing by the holders of more than two-thirds in total
amount of the certificates of that series. The order
provided that The Marine Trust Company, as depositary,
deliver to the corporation, mentioned and provided in
said plan, all bonds and mortgages, securities, moneys,
deeds and other assets and properties " deposited with
it by Title & Mortgage Guarantee Co. of Buffalo in
said Series R of Mortgage Investments."

The depositary has appealed directly to this court from
each of said orders pursuant to the provisions of section
588, subdivision 3, of the Civil Practice Act on the ground
that the statutory provisions authorizing these orders
are invalid under the Constitutions of the State and of the
United States. Upon this appeal " only the constitutional
question shall be considered and determined by the court."

The attack is not directed against the provisions of the
Insurance Law (Cons. Laws, ch. 28) which authorize
the court, in proper case, to direct the Superintendent of
Insurance to take possession of the property of a corpora-
tion, organized under the Insurance Law, and to conduct
its business for the purpose of rehabilitating or liquidating
such company. The Superintendent becomes a statutory
receiver; the property of the corporation is brought into
the protective arm of the law and the receiver is subject

to directions of the court except in so far as discretionary power is vested by the Legislature in him. (Cf. *Isaac v. Marcus*, 258 N. Y. 257; *Matter of People [Russian Reinsurance Co.]*, 255 N. Y. 415; *Matter of People [Norske Lloyd Ins. Co.]*, 242 N. Y. 148; *Matter of Casualty Co. of America [Rubin Claim]*, 244 N. Y. 443; *Lafayette Trust Co. v. Beggs*, 213 N. Y. 280.) The provisions of section 63 of the Insurance Law (Laws of 1909, ch. 300) have been enlarged and are now embodied in article XI of the Insurance Law (Laws of 1932, ch. 191). Express power is conferred upon the Superintendent of Insurance for " rehabilitation of domestic insurers." No question is now raised as to the power of the Legislature to confer upon him authority to secure that end. Invalidity, if such there were, of a particular power which the Legislature has attempted to confer upon the Superintendent of Insurance while liquidating the property or conducting the business of a corporation with a view to its rehabilitation would not affect the unquestioned power of the Legislature to authorize the courts to appoint the Superintendent of Insurance as statutory receiver in the cases specified in article XI of the Insurance Law and to direct him to take possession of the property and to conduct the business of corporations to which the Insurance Law is applicable. The appellant here does not contend otherwise. It does not contest the right of the Superintendent of Insurance to exercise the powers of a statutory receiver as provided in the Insurance Law and in the order dated August 14, 1933, authorizing him to take possession of the property of the Title Mortgage and Guarantee Co. of Buffalo and to conduct its business; but neither the Insurance Law nor the order, granted in accordance therewith, contain any express provision for the administration of " mortgage investments " of the company taken over by the Superintendent of Insurance and which were sold or guaranteed by such company or for the adoption of

any plan of reorganization of such "mortgage investments." [The orders which are before the court for review on this appeal and which do contain such provisions rest upon chapter 745 of the Laws of 1933, popularly known as the Schackno Law, and the challenge of the appellant is directed towards the power of the Legislature, under the Constitutions of the United States and the State of New York, to enact that law.]

That law, as amended by chapter 780 of the Laws of 1933, applies to "mortgage investments" which are defined therein to "include all interest in bonds, notes and other evidence of indebtedness of individuals, partnerships, associations or corporations, secured by mortgage or mortgages or deeds of trust or similar evidence of interest in real estate upon real property, guaranteed by a guaranty corporation, and all collateral trust bonds or notes of a guaranty corporation which are secured by pledge of any such interests; but shall not include any such bond, note or other evidence of indebtedness when the same shall be held entirely by only one person, firm or corporation or any such collateral trust obligations when all of them having the same security are held entirely by only one person, firm or corporation."

The statutory definition covers many forms of " interest " in bonds, notes and other evidence of indebtedness, but every " interest " must, from its nature, arise from contract and be defined by contract and must attach to the obligation of a contract. It attaches to the obligation of the debtor and to the obligation embodied in the mortgage, deed of trust or pledge which secures it. It attaches, too, to the guaranty of the guaranty corporation. [The Legislature has decreed that the rights of the holders of such interests shall not be enforced in strict accordance with the letter of the contract. To that extent it has impaired the obligations of contract.] The statute and the orders of the court granted pursuant thereto are assailed on that ground. The prohibition,

contained in section 10 of article I of the Constitution of the United States, that no State shall pass any law impairing the obligation of contracts, like the broader prohibition, contained in the Fourteenth Amendment, that no State shall deprive any person of life, liberty or propperty without [due process of law [" is not an absolute one and is not to be read with literal exactness like a mathematical formula."] (*Home Building & Loan Assn.* v. *Blaisdell*, 290 U. S. 398, opinion by Hughes, Ch. J., decided January 8, 1934.) In that opinion the relevant decisions of the Supreme Court of the United States have been exhaustively set forth and considered. We repeat here only some of the general conclusions of the court drawn from these decisions: " Not only are existing laws read into contracts in order to fix obligations as between the parties, but the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order. The policy of protecting contracts against impairment · presupposes the maintenance of a government by virtue of which contractual relations are worth while,— a government which retains adequate authority to secure the peace and good order of society. [This principle of harmonizing the constitutional prohibition with the necessary residuum of state power has had progressive recognition in the decisions of this court. * * * The economic interests of the State may justify the exercise of its continuing and dominant protective power notwithstanding interference with contracts. * * * The question is not whether the legislative action affects contracts incidentally, or directly or indirectly, but whether the legislation is addressed to a legitimate end and the measures taken are reasonable and appropriate to that end.] * * * Undoubtedly, whatever is reserved of state power must be consistent with the fair intent of the constitutional limitation of that power. The reserved power cannot be construed so as to destroy the limitation, nor is the limita-

tion to be construed to destroy the reserved power in its essential aspects. They must be construed in harmony with each other."

These general principles must guide the court in the determination of whether in a particular case an attempted exercise of the reserved power of the State transcends the limitation placed by the Constitution upon that power. No unchanging yardstick can be fashioned applicable at all times and under all circumstances by which the validity of each statute may be measured and determined. " Every case must be determined upon its own circumstances." (*Von Hoffman* v. *City of Quincy,* 4 Wall. [U. S.] 535, 554.) " Mechanical concepts of jurisprudence make easy a decision on the strength of seeming authority." (*People* v. *Nebbia,* 262 N. Y. 259, 270.) Authority may establish the criteria to be applied in the ever-changing conditions of a complex economic civilization, they do nothing more.

The decisions of the United States Supreme Court do certainly establish these criteria: [Legislation which impairs the obligation of a contract or otherwise deprives a person of his property can be sustained only when enacted for the promotion of the general good of the public, the protection of the lives, health, morals, comfort and general welfare of the people and when the means adopted to secure that end are reasonable.] Both the end sought and the means adopted must be legitimate, *i. e.,* within the scope of the reserved power of the State construed in harmony with the constitutional limitation on that power. Even " the economic interests of the State may justify the exercise of its continuing and dominant protective power notwithstanding interference with contracts." (*Home Building & Loan Assn.* v. *Blaisdell, supra.*)

The statute now attacked contains a legislative declaration of the facts which, in the opinion of the Legislature, create " the existence of a public emergency affecting the

health, safety, and comfort of the people requiring the provisions of this act." This declaration of fact is confirmed by common knowledge.

Without reciting these facts at length, it is sufficient to say that mortgage investments are widely held by investors through ownership of " certificates " of an interest in particular mortgages, guaranteed by guaranty companies. Owing to a sudden change in economic conditions many owners of real estate are unable at the present time to meet the obligations of the mortgages on their property. Defaults are numerous and immediate liquidation of a substantial amount of these mortgages through foreclosure or other court proceedings " would so demoralize the general real estate market that there might be realized on such bonds, mortgages or other security substantially less than the face amount thereof and substantially less than would be realized if they were disposed of in an orderly manner over a reasonable period of time." Free liquidation now of such obligations would result " in such unprecedented demands upon the resources of the guaranty corporations that their resources would be sufficient only to pay a relatively small portion of such demands."

It cannot be doubted that the free liquidation of great amounts of indebtedness secured by mortgages would result in widespread ruin to real estate owners and in probable widespread damage to investors. That situation affects the economic welfare of the community and affects the vital interests of the comunity. Legislation intended to relieve that situation is directed towards a legitimate end. Further discussion of that question is forestalled by the recent decision of the Supreme Court of the United States in *Home Building & Loan Assn.* v. *Blaisdell (supra).* The question remains whether the means adopted by the Legislature are also legitimate and reasonable.

The Legislature has, by other statutes, recently adopted,

changed the remedy of all holders of bonds and mortgages for the enforcement of their contractual rights. Resort even to the modified remedy may impose hardship on the debtor and injuriously affect the economic welfare of the State. The constitutional limitations upon the reserved power of the State preclude legislation which would entirely relieve a debtor from the hardship of compliance with an obligation voluntarily assumed. The owner of that obligation may, nevertheless, in his own interest, decide to postpone resort to legal remedy for its enforcement or may enter into an agreement for a change of that obligation and it is common knowledge that investors often find it to their own interest to adopt such course. Choice of whether to forego or to avail himself of the remedies afforded by the law for the enforcement of a legal remedy is left by such statutes to the owner.

The statute now under attack may properly be regarded as a supplement to these statutes. It affects only the holders of interests in contractual obligations which are held by more than one person, firm or corporation and which are guaranteed by a guaranty corporation. Where more than one person has an interest in a contractual obligation it is evident that there can be no voluntary agreement for change in the contractual obligations unless all consent and conversely there can be no enforcement of the contractual obligation except by a common agreement or by a person authorized to act in accordance with the terms of the original obligation or contract or by a person appointed in his stead. Ordinarily the holder of certificates of an interest in guaranteed mortgages has no rights or duties in connection with the mortgage at least as long as the guaranty company is doing business and complies with its own undertakings. The guaranty company under its contract with the holder of the certificate may decide whether to foreclose or extend the mortgage, to waive or to resort to a remedy for any default. It assumes the risk of ultimate deficiency in

payment of the indebtedness secured by the mortgage and maintains control of the primary obligation. In effect the mortgages underlying the certificates are regarded by the parties as security for the obligation of the guaranty company. When the guaranty company becomes insolvent or ceases to do business, a situation arises not provided for in its agreement with the holders of the certificates. When the guaranty becomes of doubtful value, the holders of the certificates must rely upon the mortgages for satisfaction of their claims and, when the guaranty company ceases to conduct business, some other person, or corporation, must be substituted for it, authorized to administer or, at least, to enforce the mortgage investments in which all the certificate holders are interested.

The Schackno Act provides that the Superintendent, who has taken over a guaranty corporation for rehabiliation, or liquidation, " shall be authorized with respect to any bonds, mortgages or other security held by such guaranty corporation or otherwise, against which any mortgage investments have been issued, to do by himself or by his authorized agent, any of the following:

" (a) To receive, collect and sue for the interest and principal of the bonds, mortgages and other security held by such guaranty corporation or otherwise, or to bring any foreclosure action on the same and take title to the property sold under such action in such name or names as he may determine;

" (b) To deduct from any sum so obtained a reasonable amount to cover the costs and expenses of any such collection, suit, or foreclosure action, or any other functions performed by him pursuant to this act;

" (c) To distribute the balance of such sums so collected to the holders of such mortgage investments or, at the election of the superintendent, (1) to withhold, for such time as he deems expedient or desirable, all or any part thereof from distribution, or, (2) in his discretion, to apply

all or any part thereof for any purpose whatsoever which he deems advisable or necessary for the protection of the interests of the holders of such mortgage investments."

We find no substantial basis for any claim that any of such provisions are invalid. It is said that the certificate holders are the owners of the mortgages underlying the certificates and that the statute permits the Super-intendent of Insurance to take over and liquidate their property without, even, making provision for notice to the holders of the certificates and thus deprives them of their property without due process of law. Though the certificate states that the company " assigns to the registered holder hereof an undivided, coordinate share of the same amount in the principal sum secured by the bonds and mortgages deposited or which may hereafter be deposited by the company with the Marine Trust Company of Buffalo, * * * as depositary under the terms of an agreement bearing date June 10, 1927, subject to which this certificate is issued, together with interest thereon at the rate of $5\frac{1}{2}\%$ per annum," an analysis of all the terms of the certificate and of the contract, to which it is subject, discloses that the guaranty company has entered into an unconditional promise to pay, ten years from the date of the certificate, the principal sum secured and accrued interest and has transferred to the holder only an interest in the deposited mortgages as collateral security for its debt. (Certainly the holder acquires, prior to default, no rights in the mortgages other or greater than the rights of a holder of collateral security and the guaranty company retains at least the rights of an owner who has cumbered his title with a lien.\ True the certificate provides that the guaranty company shall exercise these rights as " agent " for the holder of the certificate, but we construe the contract in accordance with its substance and effect, not with its form. So construed, the guaranty company is a primary debtor, assigning the mortgages only as collateral security for the debt.

The impairment of these obligations must be judged accordingly.

The statutory receiver of a corporation, subject to the provisions of the Insurance Law, may certainly administer the property of such corporation even though a creditor has a lien on some of such property, at least where the corporation itself has power of administration. We recognize that there may be forms of interest covered by the statute where all property in mortgage investments has been transferred from the guaranty corporation or which confer upon a third person power to administer such investments. No such forms have been called to our attention. " It does not matter that there are, or may be, individual cases of another aspect. The Legislature was entitled to deal with the general or typical situation." (*Home Building & Loan Assn.* v. *Blaisdell, supra.*) Even if the corporation had a right to administer the investments only as fiduciary or agent, the investments could not be abandoned and the Superintendent might be empowered to administer them at least until they were claimed by the owners or some person authorized to represent the owners. A statute may be unconstitutional which, without notice to an owner, bars reclamation by the owner of property in the hands of a receiver or liquidator (*Matter of International Milling Co.,* 259 N. Y. 77), but this statute has no such effect. Where the administration of property is the duty and part of the business of a corporation, taken over by a liquidator or rehabilitator, then the continued administration by him is merely an incident of the liquidation or rehabilitation proceedings and deprives those interested in such property of no rights. Only where there is a deprivation of rights is notice and opportunity to be heard in opposition necessary.

It is said that in some minor particulars the powers of administration accorded to the Superintendent of Insurance are greater than the authorized powers exercised by

the guaranty company. He may take from the depositary securities which the guaranty company agreed to leave in the custody of the depositary. The depositary had no property in or right to the securities so deposited. When the guaranty company became insolvent, the depositary had no duty or function except to hold the· deposited securities till they could be delivered to some person authorized to conserve or administer the securities for the benefit of those entitled to their proceeds. A direction to deliver the securities to the Superintendent of Insurance, who has such authority, impairs no obligation of the contract. He is permitted to " deduct * * * a reasonable amount to cover the costs and expenses of any such collection, suit, or foreclosure action, or any other functions performed by him pursuant to this act." It is said that the guaranty company could make no such deduction. That is true, at least, in the sense that the guaranty company was bound to pay to the holders the full sum secured. The statute does not deprive the certificate holders of a right to compel the guaranty company to collect without expense, or to pay the full sum it promised to pay without deduction of expenses. The right to compel the guaranty company to collect without expense was lost when that company ceased to do business. Thereafter the rights which remained in the certificate holder were to collect upon the mortgages and to claim the deficiency from the company. Any person or corporation collecting the mortgages might incur expenses and these expenses would be a charge' on the fund. When the Legislature authorized the Superintendent to administer that fund in place of the corporation, it is plain that it could also direct that the expenses should be a charge on the fund just as the expenses would have been in case such administration had been made by any other authorized person. The certificate holders are relieved of fees or compensation payable ordinarily to trustee or agent. In arriving at this con-

clusion we give the language of the statute its fair construction. Doubtless any construction that would impose on the fund a charge for functions performed by the Superintendent of Insurance outside of the administration of this fund, would be subject to more serious attack. We construe the statute as authorizing deductions only for collection and " other functions performed by " the Superintendent in the administration of the property or mortgages in which a single group of certificate holders are interested.

What we have said here applies with equal force to the provisions of the statute which authorize the Superintendent to withhold for a time distribution of moneys collected or to apply them for the protection of the interests of such certificate holders. These are powers which are, in true sense, incidental to the power of administering the mortgage investments. They deprive neither the group of persons who have an interest in such investments nor any individual member of that group of any right which they or he was given by contract. Rather, they constitute a remedy in a condition where the original contract failed to provide remedy.

These powers vested in the Superintendent must, indeed, be regarded as provisions for safeguarding the interests of groups of holders of mortgage investments until a plan can be devised for permanent administration of these investments. Pending action by the group the fund must be conserved. Provision for such conservation is made by the statute. So, too, provision is made for the adoption of a plan for permanent administration. The powers vested in the Superintendent of Insurance extend no further than to conserve the fund and as incident thereto, to bring actions to enforce the contractual obligations which constitute the fund until a plan is adopted for the permanent administration of the fund; to charge upon the fund the expenses of this administration of the fund; and in his discretion and for the

protection of the owners, to withhold payment of the balance of the fund until a plan is adopted. These powers are no greater than are ordinarily exercised by a receiver appointed in an equity action to conserve the fund and the Legislature could vest them in the Superintendent of Insurance.

The essential purpose of the statute is, however, to provide for the adoption of a plan for the permanent administration of the mortgage investments in which groups of investors are interested. All else is subsidiary. If the provisions for the adoption of such plan transcend the limitations of the legislative power, then the statute fails of its purpose. Each holder of a certificate is, under his contract, entitled to insist upon the enforcement of the bond, mortgages and other security in which he has an interest and to a *pro rata* share of the moneys collected. Foreclosure at the present time may be beset by insurmountable obstacles for there may be no money available to pay the expenses of necessary action. Foreclosure may destroy the investment of the other holders of certificates of the same series; for the property, at the present time, may, at a forced sale, bring no more than the amount of the tax liens. Foreclosure may ruin the owner of the equity of redemption. General foreclosure of the vast amounts of mortgages in which groups of certificate holders are interested might so demoralize the real estate market that the value of all mortgages would be diminished and the credit of insurance companies and savings banks destroyed. In spite of all this the owner of a single certificate in a series has a contractual right to insist upon the enforcement of every contractual obligation in which he is interested and to refuse to accede to any impairment of such obligation by agreement. The statute was intended to meet that situation.

It does so by providing that after a hearing upon a proposed plan or agreement for the readjustment, modi-

fication or reorganization of the rights of the holders of any mortgage investment the Supreme Court may approve such plan, but that such plan shall not become effective " until the holders of two-thirds in principal amount of such mortgage investments (exclusive of any part thereof held by the guaranty corporation which sold or guaranteed such mortgage investments) or their agent duly authorized, shall have consented to such plan." Such hearing must be held not less than twenty days after mailing of notice addressed to each holder at the address furnished him by the guaranty corporation.

The fairness of these provisions is evident. They do not give to a majority in interest, however large, the power to coerce another holder to accede to any plan of reorganization by the majority. They do not give the court power to coerce a single holder to accede to any plan of which the court approves. They do give the court authority, after a hearing, to approve a reorganization plan which is consented to by two-thirds in amount of those interested and to declare such plan effective.

We may assume that except for this statute a certificate holder might stand upon his contractual rights and refuse to accede to any plan of reorganization of the rights of the holders of the mortgage investment, however advantageous the plan of reorganization might be. We may even assume that the Legislature could not pass a law which would compel a single holder to accede to such a plan though approved by the court and consented to by a majority in amount of all the holders of interest in an investment, if only the rights of the parties to the contract were involved. Here, as we have said, much more is involved. Unreasonable insistence on contractual rights may work serious injury to the economic welfare of all the people. The statute must be judged in the light of that fact. Under conditions as they exist at present, the vital interests of the community call for legislation by which the investments of great numbers of

people may be conserved and ruin averted. The Legislature has characterized the situation as a "public emergency." It is immaterial whether we call the situation an emergency or not. It is a situation in which the Legislature could properly declare, as it has done, that it is "essential for the public interest to provide a procedure under which such bonds, mortgages or other security may be liquidated in an orderly manner and under which the assets of the guaranty corporations may be administered and conserved equally and ratably in the interests of holders of mortgage investments."

It has been said that "while emergency does not create power, emergency may furnish the occasion for the exercise of power." (*Home Building & Loan Assn.* v. *Blaisdell, supra.*) Extraordinary conditions may call for extraordinary remedies. Whether an emergency exists or not, the test in each case is whether a situation exists which calls for the exercise of the reserved power of the State and whether the remedy adopted by the State is reasonable and legitimate. An individual may not justly complain of a reasonable legislative invasion of his usual rights or a reasonable legislative restriction of his usual liberty for the purpose of averting an immediate danger which threatens the safety and welfare of the community.

To secure the foundations of credit and good faith in the performances of obligations, to prevent the adoption by the States of laws for the defeat of creditors and invasion of contractual obligations, the constitutional limitation was placed upon the States' "power of changing the relative situation of debtor and creditor, of interfering with contracts." (*Ogden* v. *Saunders*, 12 Wheat. [U. S.] 213, 354.) Here the Legislature has not attempted to change the relative situation of debtors and creditors or provided that any obligation of a contract shall be impaired without the consent of two-thirds in amount of the holders of an interest in such obligations. Perform-

ance by the debtor according to the letter of the bond may be demanded unless holders in that amount consent to its postponement or alteration. The statute is directed solely towards facilitating agreement among such holders in a plan which will be fair to all and to prevent unreasonable insistence upon the letter of the obligation of contracts when, under changed conditions, such insistence might work injury both to individuals similarly situated and to the community. It gives, indeed, to the creditors as a group a remedy which they did not have before; it deprives no one of a remedy which he would use for his legitimate benefit or without injury to others.

Impairment of the obligation of contracts to that extent and under analogous safeguards is not without precedent even in normal conditions. Analogy might be drawn between the provisions of the statute and the provisions of the Bankruptcy Law in regard to composition agreements. So, too, analogy may be found in decrees of courts of equity providing for corporate reorganizations. We do not press these analogies; distinctions might be pointed out. We recognize, of course, that they have not arisen from the invocation of the reserved power of the State. We refer to them only as an indication that in appropriate conditions it is not unreasonable to give effect to a plan which an informed court, after hearing, has approved as fair to the entire group interested and to all the individuals in that group and to which a majority of that group consent. When a State decrees that in order to meet threatened danger to the community plans adopted with such safeguards may be declared binding on all, the law is not unreasonable. It does not destroy credit or undermine confidence in private faith. It does not take one man's property or contractual rights for the benefit of others. It does not deprive any one of a substantial right even for the benefit of a community.

True, when normal conditions are restored, when strict enforcement of the obligations of mortgage investments

no longer constitutes an imminent danger to the vital interests of the community, further operation of the statute may be unreasonable. On such question we do not now pass. We consider now only whether the present remedy provided for present conditions is reasonable and legitimate. "A law depending upon the existence of an emergency or other certain state of facts to uphold it may cease to operate if the emergency ceases or the facts change even though valid when passed." (*Chastleton Corp.* v. *Sinclair*, 264 U. S. 543, 547.) Failure by the Legislature to limit the operation of the law to a definite term does not render the law invalid so long as the conditions which justify the passage of the law remain.

At times postponement of the enforcement of contractual obligations or their temporary impairment may be the means reasonably adopted to meet a temporary condition. Indefinite postponement of remedy might in effect be a deprivation of right, and permanent impairment might be an unreasonable remedy. If the Legislature exceeds the limitation of its reserved powers then the statute is invalid. In such case these factors may be decisive. That is not true here. There is no postponement here of the enforcement of the obligation of contracts and such permanent impairment as may result from the application of the statute is subject to safeguards which reasonably protect all substantial rights; deprives no one unreasonably of rights and is adopted to secure a legitimate end.

Other objections are also urged. We have considered them and found them without substance. We refer briefly to only one further objection. We are told that the Legislature has delegated to the Superintendent of Insurance legislative powers. The statute which is directly attacked does not itself contain any provision which might be regarded as giving to the Superintendent any such power. We are referred, however, to the provisions of chapter 40 of the Laws of 1933, which provide that

during the period of emergency set forth in that statute the Superintendent of Insurance shall " have the power to suspend any provision of the insurance law in whole or in part. In addition to such power and not in limitation thereof, he shall also have power during such period to make, rescind, alter and amend rules and regulations imposing any condition upon the conduct of the business of any insurer which may be necessary or desirable to maintain sound methods of insurance and to safeguard the interests of policy holders, beneficiaries, and the public generally during such period. In the discretion of the superintendent of insurance such rule or regulation may be published in a manner to be prescribed by him or may be otherwise brought to the attention of the insurer affected in a manner to be prescribed by the superintendent of insurance." (§ 2.)

" Such rule or regulation may be inconsistent with existing law, and in such event, shall supersede such existing law inconsistent therewith." (§ 3.)

Even assuming that these provisions transcended the power of the Legislature, they cannot affect the validity of every administrative act performed by the Superintendent or of statutes giving the Superintendent administrative powers. No exercise of legislative powers conferred by chapter 40 of the Laws of 1933 upon the Superintendent of Insurance is essential in the administration of mortgage investments. Moreover, the provisions of chapter 40 of the Laws of 1933 have been amended since so as to remove possible attack on such ground.

We find that economic conditions create an immediate danger to the economic welfare and the vital interests of the community. We find that the Legislature in the exercise of its reserved power has adopted a remedy which is reasonably calculated to meet such conditions. No impairment of contract which results will substantially injure any person. The statute merely furnishes a

shield against unreasonable attack on the vital interests of the community and an additional remedy for enforcement of obligations in manner fair to all.

The orders should be affirmed, without costs.

POUND, Ch. J., CRANE, HUBBS and CROUCH, JJ., concur; O'BRIEN, J., concurs on the authority of *Home Building & Loan Assn.* v. *Blaisdell* (290 U. S. 398) and *Nebbia* v. *People* (291 U. S. 502); KELLOGG, J., not sitting.

Orders affirmed.