In the Matter of the Application of THE PEOPLE OF THE STATE OF NEW YORK, by GEORGE S. VAN SCHAICK, as Superintendent of Insurance of the State of New York, for an Order to Take Possession of the Property and Rehabilitate the TITLE AND MORTGAGE GUARANTEE COMPANY OF BUFFALO.*

DEWITT CLINTON and Others, as Trustees for the Benefit of JOSEPHINE W. CARROLL, under the Provisions of Article Fifth of the Will of MARY CURTIS WRIGHT, Deceased, Appellants; GEORGE S. VAN SCHAICK, as Superintendent of Insurance of the State of New York, and Another, Respondents.

Fourth Department, January 9, 1935.

* Affg. 152 Misc. 428; affd., 267 N. Y. ——.

*Kenefick, Cooke, Mitchell, Bass & Letchworth* [*Thomas R. Wheeler* of counsel], for the appellants.

*Thomas C. Burke*, for the respondent Superintendent of Insurance.

*Moot, Sprague, Marcy, Carr & Gulick* [*William L. Marcy, Jr.,* S. Fay Carr* and *David L. Landy* of counsel], for the respondent Buffalo Series B Corporation.

CROSBY, J. The Title and Mortgage Guarantee Company of Buffalo, hereinafter, for the sake of brevity, called the mortgage company, was organized under and pursuant to article 5 of the Insurance Law. Its business was that of selling to the public so-called "guaranteed first mortgage certificates" which were secured by underlying bonds and mortgages deposited with a bank, called the "depositary," as security for the payment of the certificates. A typical certificate provides that the mortgage company —"in consideration of $2,000 paid to it, the receipt of which is acknowledged, hereby assigns to the registered holder hereof an undivided share of the same amount [*i. e.*, $2,000] in the principal sum secured by the bonds and mortgages deposited or which may hereafter be deposited by the Company with the [named bank] as Depositary."

The certificate contains three provisions, known as the "Ten Year Clause," the "Five Year Clause" and the "Three Year Clause," respectively. The "Ten Year Clause" is a provision by which the mortgage company agrees that, ten years from date, it will pay the $2,000 together with five and one-half per cent interest. The "Five Year Clause" is a provision that the mortgage company by giving sixty days' notice of intention so to do, may pay the $2,000 with interest at five and one-half per cent, and demand an assignment of the certificate. And the "Three Year Clause" is one reading as follows: "Three years after the date of this Certificate and on any interest date thereafter, the registered holder of this Certificate, having given sixty days' previous notice in writing of his intention so to do, shall have the right upon the assignment of this certificate to the Company to require the payment of the principal sum and interest as aforesaid out of any moneys received by the Company in payment of the deposited bonds and mortgages after the receipt of such notice by the Company, and after the payment of any certificates of this issue in respect of which the Company shall previously have received notices requiring payment; and the Company agrees to pay such principal and interest accordingly. All Certificates shall be payable in the order in which such notices shall be received and registered by the Company."

It is this latter provision of the certificate that creates the question to be decided.

Due to causes, with which everyone is familiar, the mortgage company got into financial difficulty and an order of the Special Term of the Supreme Court was made upon the petition of the respondent, as Superintendent of Insurance, appointing him rehabilitator of the mortgage company and directing him to manage the same under the directions of the court. This order was made pursuant to clause (1) of section 401 of the Insurance Law upon consent of a majority of the board of directors of the mortgage company.

A plan of reorganization was devised and put into operation, pursuant to court order. The plan for reorganization contemplated the formation of a new corporation to take over the assets of the mortgage company and administer them, and the plan contained a paragraph reading as follows:

" Determination of Priorities. The rights of any certificate holders claiming priority over others, and the rights, if any, of the Rehabilitator in the assets transferred to the [new] corporation shall forthwith be submitted to the Supreme Court in and for Erie County, New York, in the Rehabilitation Proceeding."

The court order, approving the plan of reorganization, modified the plan, as regards claims for priorities by adding this provision: " All such claimed priorities and rights, however, shall be determined on the basis as if no reorganization of the rights of the holders of mortgage investments had been effected and this plan had not been approved and become binding."

The appellants here have duly served notice of their demand to be paid the face value of certificates held by them, and interest, in pursuance of the " Three Year Clause " hereinbefore quoted in full. Their appeal is from an order denying their right to priority of payment.

Appellants argue that since the mortgage company is not in bankruptcy or other state of liquidation, but only in a state of rehabilitation, they have a right to payment of their certificates according to the terms of the " Three Year Clause " even though, as a practical matter, it gives them a priority over less vigilant certificate holders who have made no demand for payment. They argue that this is especially true since, by the terms of paragraph 7 of the certificate, each certificate holder, " by the acceptance hereof assents and agrees to all the terms and provisions " of the depository agreement, so that, in effect, the certificate holders have agreed between and among themselves upon rights of priority to those who serve notice under the " Three Year Clause." Appellants argue

that the court should not strain to do equity but should have regard for the freedom to make contracts, and for the sanctity of contracts when made.

Their arguments are persuasive, but they fail to take cognizance of some important considerations. The present economic upset is familiar to everybody. Calamity would be added to calamity if everybody insisted upon the performance of the letter of the bond. Therefore, much remedial legislation has been enacted, the constitutionality of some of which has been seriously questioned. Such an act was the so-called Schackno Act (Laws of 1933, chap. 745). When it was found that the mortgage company was tottering on the verge of collapse these rehabilitation proceedings were instituted for the purpose of saving it for everybody interested, not for a few. But the powers of the rehabilitator were found to be too much restricted by the Insurance Law to enable him to do all the good that was intended. The Schackno Act gives the rehabilitator, in effect, all the powers of a liquidator, enabling him to administer fully. That act was held to be constitutional in an appeal from an order approving the plan of rehabilitation of a series of certificates (R) in all respects like the certificates (B) involved in this proceeding. (*Matter of People* [*Title & Mortgage Guarantee Co.*], 264 N. Y. 69.)

In that case the Court of Appeals was considering, primarily, only the constitutionality of the Schackno Act, but it discussed the whole scope of the problems to be met and solved. The opinion states: " The Legislature has decreed that the rights of the holders of such interests [referring to interests such as are here involved] shall not be enforced in strict accordance with the letter of the contract. To that end it has impaired the obligations of contract." The opinion further quotes, from a recent opinion of the United States Supreme Court, a statement to the effect that the constitutional prohibition against impairing the obligation of contracts " is not an absolute one and is not to be read with literal exactness like a mathematical formula." (*Home Building & Loan Assn.* v. *Blaisdell,* 290 U. S. 398, 428.)

The opinion of the Court of Appeals, in speaking of certificates of this same mortgage company, which though of a different series, are like those here involved, said further: " Each holder of a certificate is, under his contract, entitled to insist upon the enforcement of the bond, mortgages and other security in which he has an interest and to a *pro rata* share of the moneys collected."

Parties have a right, no doubt, to contract that one shall be paid ahead of another out of the proceeds of a given security. But from the reading of the whole certificate we think it was not the intention

of the certificate holders to agree that those who won, in a mad scramble to be the first to serve notice, should receive pay in full while others should receive nothing. The contract was made in contemplation of the company's continuance in business, while here we are confronted with a condition analogous to bankruptcy.

By the terms of the certificates the mortgage company agrees to pay absolutely and the certificate holders are assignees of " undivided " shares in the deposited securities underlying the certificates. This does not give a certificate holder an equitable lien upon the fund or any part thereof. (*James* v. *Alderton Dock Yards,* 256 N. Y. 298.)

The certificate holders should share equitably in the proceeds of the sale of the company's securities as in its assets if ultimately it has to be liquidated, otherwise the beneficial purposes of rehabilitation will be unrealized.

The order appealed from should be affirmed, without costs.

All concur, THOMPSON, J., in result in a separate memorandum, except LEWIS, J., who dissents and votes for reversal on the law in an opinion. Present — TAYLOR, EDGCOMB, THOMPSON, CROSBY and LEWIS, JJ.

THOMPSON, J. (concurring). In my view, it is unreasonable to give the meaning to the three-year clause in the bonds with which this action is concerned, attributed to it by the prevailing and dissenting opinions. At the most, it seems to me that the clear intent flowing from the provision is, that the method prescribed might be followed in case its provisions were complied with by bondholders, only when it could be done without loss to other bondholders. Surely it cannot be that the provision was intended to set up a method of preference in case of the corporation's becoming insolvent. It is purely a " fair weather " option, or a " facility of payment " provision, and was not intended to modify the real condition of the bond. At the most it was subordinate to the actual covenant of payment. In *Matter of People* (*Title & Mortgage Guarantee Co.*) (264 N. Y. 69, 88), where these identical bonds were being considered, the Court of Appeals said, " an analysis of all the terms of the certificate and of the contract, to which it is subject, discloses that the guaranty company has entered into an unconditional promise to pay, ten years from the date of the certificate, the principal sum secured and accrued interest and has transferred to the holder only an interest in the deposited mortgages as collateral security for its debt." This language does not admit of an assumption that the court overlooked the provision

here being discussed, but indicates rather, that the conclusion stated was based upon a consideration of this provision, as well as all the other provisions of the contract.

For these reasons, I favor affirmance of the judgment, with costs.

LEWIS, J. (dissenting). The Schackno Act (Laws of 1933, chap. 745) is one of a number of measures prompted by the existing emergency in economic conditions. One of its purposes was to set up an authority by which the assets of a mortgage guaranty corporation could be conserved and administered under government supervision until the causes necessitating such action have been removed. Among those whose rights are sought to be protected by the statute are the holders of certificates of interest in guaranteed mortgages.

From the record before us it appears that the Superintendent of Insurance, acting as a rehabilitator under the statute, has been placed in charge of the affairs of the Title and Mortgage Guarantee Company of Buffalo. He has conserved its assets and administered its affairs in the interest of the owners of its mortgage investments and is now in court, upon an application by certain trustee holders of a certificate who have given due notice of their demand for payment thereof and who seek an order declaring them to be entitled to payment prior to the payment of any other certificates on which demand was made subsequent to their own or on which no demand whatever has been made.

I am not in accord with the decision about to be made which I believe transcends the authority given by the Schackno Act and impairs a clear contractual obligation between all certificate holders, viz., that, after three years from their date, all certificates shall be payable in the order in which notices requiring their payment shall be received and registered by the company.

Proper deference to the ruling by the Court of Appeals in *Matter of People (Title & Mortgage Guarantee Co.)* (264 N. Y. 69) leads to the conclusion that the acts of the Superintendent of Insurance in taking over the affairs of the company involved in this proceeding were legal even though, in a strict sense, they may have impaired the contractual relations of each certificate holder. However, I do not interpret that decision as having determined the question now before us, for the opinion states (p. 80): " Upon this appeal ' only the constitutional question shall be considered and determined by the court.' "

Admitting that the Superintendent of Insurance was authorized to take over the affairs of the corporation and assuming he has conserved its assets and administered its affairs in a manner to

meet the design of the Schackno Act, I find no statute and no decision which authorizes the court, *after the beneficial purposes of the act have been accomplished*, to disregard or amend the plain provisions of each certificate wherein the holder thereof has agreed to a definite method of payment. Borrowing from language more convincing than my own, *Matter of People (Title & Mortgage Guarantee Co.) (supra*, at p. 92), " the owner of a single certificate in a series has a contractual right to insist upon the enforcement of every contractual obligation in which he is interested and to refuse to accede to any impairment of such obligation by agreement." The force of this statement is emphasized when applied to the proceeding before us where certificate holders are insisting upon the recognition by the court of a vested contractual right, at a time when the beneficent purposes of the Schackno Act have been accomplished, and the conserved assets of the corporation are to be distributed. I believe the effect of the ruling by a majority of the court is to disregard that vested right. Accordingly I dissent.

Order affirmed, without costs.