Louis J. Goodman, Plaintiff, *v.* Deutsch-Atlantische Telegraphen Gesellschaft (German Atlantic Cable Company), Defendant.

Bernard Douglis, Plaintiff, *v.* Deutsch-Atlantische Telegraphen Gesellschaft (German Atlantic Cable Company), Defendant.

Supreme Court, Special Term, Kings County, January 18, 1938.

*Jacob Chaitkin,* for the plaintiffs.

*Cravath, deGersdorff, Swaine & Wood,* for the defendant.

MacCrate, J. Motions granted. Plaintiffs as bond and coupon holders sue defendant. The latter by answer asserts it cannot pay in dollars because of a decree of the government of Germany. Plaintiffs seek summary judgment. The defendant is a company organized under the laws of Germany to conduct the business of transmitting cable messages from that country to the Azores, and by agreement with American companies from the Azores to the United States. To construct its system, a bond issue was sold in the United States. A deed of trust was entered into between defendant and a New York company as trustee. The parties are agreed that the law of New York controls. They differ as to what effect that law gives to a provision in the deed of trust to the effect that the obligations of the defendant are "covered" by the law of Germany. They do not differ in so far as the deed of trust requires suits against the defendant to be brought in Germany. It is agreed that under New York law its courts are not by that provision ousted of jurisdiction to determine the intent of the parties under a New York contract. Plaintiffs needlessly run from the deed of trust as if it were a plague. It is true that throughout the instrument specific obligations are stated to be controlled by German law and there is the general statement by defendant that it has complied with that law. Surely the provisions for filing and obtaining consents could only be "covered" by that law. But these specific instances tend to show that the parties were knowingly using "covered" instead of "governed." Plaintiffs also argue that if the asserted German law is to be incorporated into this New York contract, it can only be considered if it does not counter our public policy. Plenty of tears have been shed for American investors who seek high percentage rates on foreign bonds. It has not always been inquired at what discount they bought to see if the high rate was the measure of the gain. When default comes, the American flag is raised and even the marines are asked to be sent to help collect. (Beard, The Open Door Abroad.) Fortunately it is not necessary here to assume the pharisaical posture and thank Providence we are not like other people when it comes to observance of the letter of the bond. If it were, we would hesitate to say that our necessity which makes fiscal law here cannot be be matched by "their" necessity elsewhere. It has been said that "necessity is the plea of tyrants." Statutes of recent date everywhere show that those who would shun the title have used the plea. If morals enter into the discussion of the conflict of laws in matters purely monetary, then what we deem right for the preservation of our financial structure cannot be wrong when employed by others. We do know that Russian legislation which was castigated by hot

words before our Federal government recognized Russia was left unscathed when that recognition was accorded. The character of the legislation had not changed. The underlying policy of acknowledging the power of a friendly sovereignty to deal with its financial problems was asserted.

Our Federal Supreme Court has declared when there is conflict between contract provision and public welfare the latter can compel even the frustration of the contract. (*Holyoke Water Power Co.* v. *American Writing Paper Co.*, 300 U. S. 324.) Our Court of Appeals has intimated that here, too, such is the law. (*Matter of People [Title & Mortgage Guarantee Co.]*, 264 N. Y. 69.) Moreover, the unequal effect of legislation has not always rendered the legislation unconstitutional. (*Bayside Fish Co.* v. *Gentry*, 297 U. S. 422.)

If the defendant corporation had physical properties in this nation and State and an attempt were made by the trustee to foreclose, it might refer to some not ancient legislation which plaintiffs could not easily demolish by an appeal to our public policy. Even between our citizens it has been remarked that public policy is a dangerous ground on which to base invalidity. (*McQuade* v. *Stoneham*, 263 N. Y. 323.)

But the Court of Appeals has declared that foreign law cannot control performance in this State of a New York contract unless the intent that it shall control is manifest. (*Compania De Inversiones Internacionales* v. *Industrial Mortgage Bank*, 269 N. Y. 22.) Here it is not manifest. We deal with a trustee created by and subject to New York law. The parties did not state its obligations or rights were " covered " by German law. The properties are outside of this jurisdiction. The very nature of those properties made them a subject of national concern to Germany, especially in war or in time of internal disturbance. Yet with the expressed consent of the German government, although it is not a party to the trust deed, the defendant agreed that the trustee could take the properties in those events and collect tolls and pay interest or principal on bonds. Too obvious to need citation is the principle that sovereignty in its own courts cannot be bound by its agreement to surrender its police power. Yet here, in addition, we have a guaranty that the government was to help the defendant float its bonds and a statement in the deed of trust that moneys were to be advanced by the government to meet interest and principal according to the trust deed, which requires dollar payments. In addition, we have the promise not to raise any defenses and a waiver of any present or future law of which defendant might avail itself to prevent the trustee from exercising the powers of the trust. True there is a statement that

the waiver would operate in so far as permitted by the law or laws. But read in connection with the provisions as to war and governmental guaranty and in light of the defendant's business and the desire to get American money, the waiver clause shows that it was the purpose of the parties to give free course to the bonds by assurance that no present or future law or other sovereign act of Germany would prevent performance by defendant in dollars, and that the defendant in assuming the broad obligation was " covered " by existing German law. If not, the war provision was a snare and a delusion as was the statement of guaranty and advance of money by the German government. Certainly the parties knew that the trustee had obligations which New York law would enforce. In the absence of statement that either its obligations or rights as trustee " are covered by German law," it must be assumed that the parties intended New York law should control its conduct. Surely in case of war with Germany it was not thought a creature of this jurisdiction would follow the law of Germany controlling the properties of its nationals, especially where property was unmistakably useful in war. The parties must have been conscious of the futility of attempting practical exercise of control by the trustee of these cables in war time. The conclusion is irresistible that these provisions were inserted to disclose the intent that future governmental law or act of Germany was not to limit the promise to pay. Yet so broad was the obligation of the defendant in this regard they deemed it necessary to declare all obligations were " covered " by then existing German law. Had they intended both parties to be bound by, that is, within German law, that could have been so stated. Had they intended future law to control appropriate language was at hand. They showed discrimination in using " covered " when referring to law and " governed " when referring to language.