FREDERICK H. HURDMAN and Others, Copartners Doing Business under the Firm Name and Style of HURDMAN & CRANSTOUN, Appellants, *v.* ORIE R. KELLY and Others, as Trustees of Groups of Mortgages Guaranteed by Westchester Title & Trust Company, and Designated as Series Sp. 7191, etc., and OLIVER W. BIRCKHEAD and Others, as Successor Trustees, etc., Respondents.*

Second Department, June 17, 1938.

\* Affg. order of March 25, 1938, cancelling *lis pendens*, reported in 167 Misc. 945.

*Monroe J. Cahn*, for the appellants.

*Edmond M. Hanrahan*, [*Edward A. Silliere* with him on the brief], for the respondents, resigned trustees.

*William A. Pallme*, for the respondents, successor trustees in Series 8-F, 15-F and 22-F of the Westchester Title & Trust Company.

*William F. Bleakley* [*John J. Ryan* with him on the brief], for the respondents, successor trustees of Trust Estate 71-C, Westchester Title & Trust Company.

*Irving B. Lydecker*, for the respondents, Trust Company of Northern Westchester, and others, as successor trustees.

PER CURIAM. The action is to establish an equitable first lien upon all of the assets of the trust funds.

In August, 1933, the Superintendent of Insurance, by order of the Supreme Court, became possessed of the assets of two corporations, the Westchester Title & Trust Company and Lawyers Westchester Mortgage & Title Company, then in financial difficulties, for the purpose of rehabilitation or eventual liquidation. The Superintendent thereby became a statutory receiver; and the property of the corporations was brought into the protective arm of the law and the receiver became subject to directions of the court except in so far as discretionary power was vested in him by the Legislature. (*Matter of People* [*Tit. & Mtge. Guar. Co.*], 264 N. Y. 69, 80, 81.) In December, 1934, the assets of these corporations were turned over, by order of the Supreme Court, to three trustees under what was known as the " Westchester Plan " for the purpose of managing and liquidating the assets of the corporations and dis-

tributing the proceeds to about 9,000 certificate holders of the different series of mortgages. A declaration of trust was executed by these trustees, who undertook to serve without compensation, which was approved by the court. They became the owners of such assets and were empowered to distribute the proceeds to such certificate holders as registered their certificates with the trustees.

It was provided, among other things, that these trustees should not be personally liable, but that all claims should be made against the trust estate.

It was also provided in the declaration of trust that the trustees should prepare and submit to the court, for approval, a plan for liquidation, and should provide a budget of their estimated expenses. Each year they were required to file an account of their receipts and expenditures and their estimated expenses for the following year.

It was recognized in the trust agreement that expenses would necessarily be incurred for rent, bookkeeping, auditing, counsel fees and other general expenses, and that it would be necessary to employ a number of persons to carry out the work. There was provision for payment by a levy of one-quarter of one per cent on the principal of the mortgages annually, to be paid from income and assets with no assessment on certificate holders.

The trustees employed the plaintiffs as accountants and auditors; and they have been continuously so employed prior to and subsequent to the commencement of this action. From the funds available in the budget they have received payments from time to time; but there is a substantial balance unpaid. It is this amount which they seek to establish as a first equitable lien on the assets of the trust.

It may be, as plaintiffs argue, that in the case of a private trust between individuals and corporations, where there is no obligation on the person employing them to pay for their services, they would be entitled to such a lien on the funds. But this trust is one public in its nature, undertaken primarily for the protection of mortgage certificate holders, where the court, under the statute passed in the emergency caused by the financial depression, is undertaking to direct the administration of the trust through its agents, first the Superintendent of Insurance and later the trustees under the plan. Fundamentally it is still a statutory receivership with change in method for the reason that the office of the Superintendent of Insurance was not equipped to handle the affairs of so many corporations of the same type that had come into his hands. Therefore, in this case, another agency of administration was selected; but

this agency, like the Superintendent of Insurance, was at all times under the direction of the court. In such a case the court will reserve unto itself the power to make distribution to claimants in the administration of the estate before payment to certificate holders, without preference to one over another through the granting of an equitable first lien.

The plaintiffs at all times understood the plan and the control exercised by the court in directing payment, and assented to the procedure adopted. No doubt they have a legitimate claim, and the amount thereof seems undisputed; but they are in no different position from other persons who have similar claims and who may have been paid in part under the plan and budget system. The course of conduct followed by the plaintiffs in receiving payment under the estimated budget, recognizing the fact that the court might approve or disapprove on the annual accounting, and giving letters of indemnity for payments made prior to the accounting, indicates that the plaintiffs never understood that they had an equitable lien, or sought to assert one, as against the assets of this anomalous trust, until this action was commenced. The trustees were secured in incurring obligations by a first lien on the assets given by article XIII. This lien did not operate directly in favor of plaintiffs as a matter of law, or under the budgetary plan in which plaintiffs acquiesced.

It was said by the respondents on the argument, and not disputed, that an accounting proceeding is now going on whereby claims will be adjusted and paid and distribution made. This is not shown in the record. At any rate, such a proceeding will be necessary before the estate is closed and claims paid.

There were certain irregularities or omissions at the close of the trial in respect to the decision, findings and judgment. Those omissions will be disregarded as not affecting a substantial right of plaintiffs. (Civ. Prac. Act, § 105.) The complaint was dismissed; and this court will hold that it was dismissed as to all defendants.

The judgment dismissing the complaint should be affirmed, without costs. The order entered February 14, 1938, and the order entered March 29, 1938, in so far as an appeal therefrom is taken, should be affirmed.

Present — LAZANSKY, P. J., CARSWELL, DAVIS, JOHNSTON and ADEL, JJ.

Judgment dismissing complaint unanimously affirmed, without costs. Order entered February 14, 1938, affirmed. Order entered March 29, 1938, in so far as an appeal therefrom is taken, affirmed.