what he judges had been done cannot overcome the detailed proof testified to by those who did the work.

After such a breach, compensation goes beyond the sum of the out-of-pocket payments for wages and materials. He rightfully figures on a profit on the paper to be selected, which in this case was lost by his dismissal. These considerations justify the margin charged on wages over the amount actually paid the men.

A decree for the above amount, with interest and costs, will therefore be entered.

---

(142 App. Div. 436.)

In re BANNIN et al.

(Supreme Court, Appellate Division, First Department.   January 20, 1911.)

1. TRUSTS (§ 217*)—INVESTMENT OF FUNDS—PARTNERSHIP VENTURES.

In the absence of precise directions in the will, testamentary trustees have no right to invest the corpus in a general mercantile partnership.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 301–309;  Dec. Dig. § 217.*]

2. TRUSTS (§ 217*)—INVESTMENT OF FUNDS—PARTNERSHIP VENTURES.

Authority in testamentary trustees to retain forms of investment existing at testator's death did not authorize investment of funds in a partnership venture beyond the term fixed by the partnership articles when testator died.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 301–309;  Dec. Dig. § 217.*]

3. TRUSTS (§ 331*)—ACCOUNTING—CONCLUSIVENESS OF DECREE.

Decrees approving testamentary trustees' accounts, but involving no objections to, nor specific ruling on, the form of investment, while sufficient to bar inquiry as to past transactions, do not preclude subsequent disapproval of that form of investment.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 494;  Dec. Dig. § 331.*]

4. TRUSTS (§ 331*)—ACCOUNTING—CONCLUSIVENESS OF DECREE.

A decree approving testamentary trustees' accounts showing an unauthorized investment in stocks is res adjudicata as to the propriety of the original investment; and the trustees are not chargeable because after such approval they did not dispose of the stocks which afterwards decreased in value.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 494;  Dec. Dig. § 331.*]

Appeal from Surrogate's Court, New York County.

In the matter of the judicial settlement of the fifth account of Michael E. Bannin and another, trustees, under Thomas H. Cullen's will. From part of a decree, the trustees and others appeal adversely to Hattie Morrison Davison and others.   Reversed and remitted.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Ellison, MacIntyre & Davis (William B. Ellison, of counsel, and Duncan A. McIntyre on the brief), for appellants.

Harry W. Mack, special guardian, for infant respondents.

William H. Hanford, for adult respondents and for general guardian of Harriet Muriel Davison.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

CLARKE, J. For many years prior to January 2, 1899, Thomas H. Cullen had been a member of a firm conducting a dry goods commission business under the name of Converse, Stanton & Cullen. On account of continued ill health, Mr. Cullen withdrew from active business, and on said day articles of copartnership were entered into between Edmund W. Converse, Andrew B. Cobb, both of Newton, Mass., Thomas H. Cullen, Eva C. Stanton, and Michael E. Bannin of New York, Frederick S. Converse of Brookline, Mass., Margaret C. Allen of said Newton, and Charlotte C. Pierce of Philadelphia. The said articles provided:

"Said parties hereby form a partnership under the name of Converse, Stanton & Company, for the transaction of a dry-goods commission business in the cities of Boston and New York, of which said Edmund W. Converse, Andrew B. Cobb, and Michael E. Bannin shall be the general partners and the others shall be the special partners. * * * Said parties shall be and continue partners in said business during the term of one year from the date hereof, and have contributed to the capital stock in the following amounts: Edmund W. Converse, $100,000; Andrew B. Cobb, $75,000; Michael E. Bannin, $30,000; and the following as special partners: Thomas H. Cullen, $100,000; Eva C. Stanton, $100,000; Frederick S. Converse, $80,000; Margaret C. Allen, $60,000; Charlotte C. Pierce, $30,000, which sums, respectively, shall stand to their credit on the books of the firm, and each general partner is to be credited with such further sum, if any, as he may hereafter contribute to the capital or which may accrue to him in the prosecution of the business. * * * Sixth. Each of said special partners shall be entitled to receive as compensation for the use of the capital by him or her contributed as aforesaid interest thereon at the rate of six per cent. per annum, and it is further agreed that the partnership shall repay to each of said special partners any sum or sums of money which may be assessed to him or her individually for or on account of the capital by him or her contributed to the partnership, and the general partners shall share the net gains and profits. * * * It is agreed that no withdrawal of capital or distribution of the profits shall be made before the termination of this partnership, except by mutual consent. * * * In case of the dissolution of said partnership by decease of any of the partners, the survivors shall continue the business of said firm for the joint account of themselves and the legal representatives of deceased until the expiration of the term thereof, and the affairs of said firm shall then be finally adjusted and closed, and the executors or administrators of such deceased party shall have the same interest, right, power, and authority in and over the property, business, and affairs and the books, papers, accounts, and other documents relating thereto of said partnership which deceased party would have if living."

On December 13, 1899, by an instrument in writing, the parties extended the aforesaid original agreement upon the same terms, conditions, and provisions for the period of two years from January 2, 1900. On March 18, 1901, the said partnership, under the said renewal, having still some nine months to run, Thomas H. Cullen executed his last will and testament, in which, after certain specific bequests, he gave, devised and bequeathed all the rest, residue, and remainder of his estate in trust to his trustees therein named, to pay over and apply the whole net annual income thereof to his wife, Harriet A. Cullen, for and during her natural life, with remainder over in various proportions and on varying terms to certain children and grandchildren. He appointed his friends William A. Hoe, Michael E. Bannin, who was his partner, and his son-in-law, Harry Wallace

Martin, the executors and trustees under the will, and among other things provided:

"And I will and direct, that the trustees or trustee of the said trusts hereby created shall be authorized to retain in the form in which they shall exist at the time of my death, any investments by me made, whether or not the same are invested in subjects, or investments permitted to trustees by the ordinary rules of law, and that the said trustees or trustee shall be authorized to invest the trust funds as well in the purchase of real estate to be held for account of the trust as in personal property, and shall be authorized to call in and charge the investments from time to time in their discretion, and to convert the real estate into personal and personal into real, as they may from time to time deem expedient."

Testator died July 27, 1901, and his will was duly admitted to probate in the county of New York September 4, 1901. Mr. Hoe duly renounced, but the other executors and trustees qualified and entered on the performance of their duties.

On January 2, 1902, by an instrument in writing, the agreement of copartnership of Converse, Stanton & Co. was extended for the period of two years from the 1st day of January, 1902, upon the same terms, conditions, and provisions. This instrument was signed by Michael E. Bannin and Harry W. Martin, executors of the last will of Thomas H. Cullen, deceased. On January 1, 1904, a third extension for two years of said articles of copartnership was executed and signed by Bannin and Martin, trustees of the estate of Thomas H. Cullen, "upon the same terms, conditions and provisions in every particular, except the time for the termination thereof, and except that F. S. Converse is allowed to withdraw $10,000 of the capital contributed by him, receiving interest on the remaining capital as provided in the original agreement." A fourth extension was executed for two years from the 1st of January, 1906; a fifth extension on January 1, 1908, for two years, upon the same terms and conditions, except that it was provided that Frederick S. Converse should retire from said partnership and withdraw the entire amount of capital theretofore contributed by him, to wit, $70,000, and that Ellen M. Cobb should become a special and limited partner in said copartnership and contribute the sum of $40,000.

The agreement was in full force and effect at the time of the accounting here under consideration. Notwithstanding the language of the articles of copartnership, the use of the terms "general" and "special" partners, and the differentiation in duties, responsibilities, pecuniary returns, and arrangements between themselves, the referee found as a matter of fact "that no attempt at any time since the formation of the said copartnership on the 2d day of January, 1899, was ever made by the decedent or by the said firm of Converse, Stanton & Co., or by the trustees herein, to conform to the laws of the state of New York as to special partners," and as a conclusion of law "that the copartnership known as Converse, Stanton & Co. is a general partnership under the laws of the state of New York," and that all the members of the firm of Converse, Stanton & Co. were at the time of the death of the testator subject to all the liabilities of general partners in the state of New York."

So that the $100,000 which the decedent had contributed to the capital of the firm and which continued therein to the time of his death on July 27, 1901, and which, under the ninth clause of the original articles was to continue in the business until the expiration of the term thereof, which by the first extension executed by the decedent was to expire on the 2d day of January, 1902, was not only allowed to remain as part of the capital of the copartnership until said date, but the trustees, one of whom was a general partner in the concern, have by repeated instruments in writing continued the estate as a general partner notwithstanding changed conditions, under which, first, one of the so-called special partners was permitted to withdraw $10,-000 of his contribution to capital; and, second, the same partner was permitted to retire, entirely withdrawing his contribution of $70,000, and Mrs. Cobb was substituted in his place with a contribution of only $40,000. In the absence of precise directions in the will, it is too clear to require argument that it would be a breach of duty on the part of the trustee of such a trust to subject the corpus thereof to the chances and liabilities of a general partnership in a mercantile business.

The contention of the appellants is, first, that the will directly authorized their conduct in the provision:

"That the trustees or trustee of the said trusts hereby created shall be authorized to retain in the form in which they shall exist at the time of my death, any investments by me made, whether or not the same are invested in subjects or investments permitted to trustees by the ordinary rules of law."

And it is pointed out that this will was made by the testator after he had executed the articles of copartnership which provided that, in case of the dissolution of said partnership by decease of any of the partners, the survivors shall continue the business of said firm for the joint account of themselves and the legal representatives of the deceased until the expiration of the term thereof, and that he had himself executed one extension of said articles for a term of two years which expired on the 2d of January, 1902, and that his will must be read in the light of those facts, and should be interpreted as indicating that one of the investments contemplated by him when he authorized his trustees to retain his investments in the form they should exist at the time of his death, whether permitted by the ordinary rules of law or not, was his contribution to the capital of this firm.

If it should be conceded that such interpretation was reasonable, we are of the opinion that it should be confined to the term fixed by the articles of copartnership existing at the time of the testator's death. The first term was but for a year, evidently for the purpose of affording a short period in which to determine whether the new arrangement was successful, and permitting a quick readjustment if found necessary. Evidently it was successful, for the arrangement was renewed, but again not indefinitely, but for a period of two years. It would be, we think, a violent assumption to conclude that the testator intended to confer power upon his trustees to create his estate a general partner in a mercantile firm to continue indefinite-

ly and subject to change in personnel and in contribution of capital by its different members from time to time. We are persuaded that no such conclusion is required, and that it was the duty of the trustees, at least at the conclusion of the term ending on the 2d of January, 1902, to have withdrawn that $100,000 from the capital of the copartnership, and to have invested it in the manner required by law.

The second contention is that the matter is res adjudicata; that the executors duly accounted as such; that all persons then having an interest, either as life tenant or as remainderman, in the estate were duly cited; that the accounts were passed without objection; that thereupon the executors turned over the estate to themselves as trustees; that they have had, as trustees, four prior accountings; and that the effect thereof is not only a justification of their past transactions and the legality of the investment, but a bar to questioning the continuance thereof. In the trustees' first accounting appeared in schedule H this item:

"The interest of the deceased in the firm of Converse, Stanton & Co., $100,-000. No settlement."

The item appeared in the same form on their second accounting in schedule G. In their third accounting, in schedule H, it appears as follows:

"The interest of deceased in the firm of Converse, Stanton & Co., $100,000. No settlement had yet with surviving partners."

And it appears in the same form in the fourth accounting.

We think, where no objections were interposed and no specific ruling had thereon by the court, and the decree upon the accounting merely approved the accounts as rendered and fixed the amounts in the hands of the trustees, that this, while sufficient to bar inquiry as to past transactions, was not such an approval of the mode of investment as to preclude the court upon a subsequent accounting from disapproving of the continued contribution to the capital of a going concern.

Bowditch v. Ayrault, 138 N. Y. 222, 33 N. E. 1067, was an action for the construction of a clause in a will. There had been several distributions of portions of the residuum of the estate made by the trustee under the interpretation of the will adopted by him, but there remained a sum to be distributed. While the Court of Appeals construed the will otherwise than that adopted, it said:

"The part payments made by the trustees upon the several past accountings made by them must remain unaffected by our decision herein. Those accountings have been approved by the surrogate, and must be regarded as conclusive upon all past transactions and payments covered by them. They form no bar, however, to the proper decision of the question now presented as to the distribution of the property now in the hands of the trustees."

To the same effect, Matter of Hoyt, 160 N. Y. 607, 55 N. E. 282, 48 L. R. A. 126; Matter of Elting, 93 App. Div. 516, 87 N. Y. Supp. 833.

As it does not appear that this matter was specifically passed upon on the former accountings, as no attempt is made to charge the trustees with any funds distributed or paid out by them which had been

approved upon the former accounting, as the fund remains in their hands and under their control and as, even if there was an approval of the original transaction, the membership and capital of the copartnership has materially changed since the last accounting, we discover no bar to the present consideration of the question whether this trust fund should remain subject to the hazards of a general partnership in a mercantile concern. We unhesitatingly say that it should not, and so much of the decree appealed from as charges the trustees with the amount of the investment in Converse, Stanton & Co. of $100,000 as cash in their hands is affirmed.

The trustees on October 23, 1902, bought 10 shares of the capital stock of the Merchants' Trust Company, for which they paid $3,850. This item appeared in their first accounting. This was an investment made by them, and not of the character permitted by law, but it appeared clearly in the accounts, it was not objected to, and a decree approving the accounts was made. Therefore, so far as the propriety of the original investment is concerned, it must be taken as res adjudicata. On the second and third accountings this item appears as of the value of $2,000, and on the fourth account it appears as doubtful. On the 4th of December, 1904, the trustees bought 500 shares of the American Investment Securities Company, for which they paid $6,750, and on January 12, 1905, they bought 200 further shares of said company, for which they paid $2,700. These items appear in the third accounting. On the fourth, the 700 shares of said stock are valued at $7,000. On the present accounting this stock is entered as of the same value as upon the fourth accounting, $7,000. The learned surrogate in respect to the foregoing two items said:

"The investment in the stock of the Merchants' Trust Company and the American Investment Securities Company was unauthorized, and, while the same was scheduled in the prior accounts and passed without objection, the failure to dispose of the same within a reasonable time since January 9, 1908, the date of the last decree, renders the trustees liable for the amount at which these securities were then valued."

We are of the opinion that the effect of the prior decrees was an approval of the transactions. The trustees still hold in their hands the stock, the purchase of which had been approved. We think they are not properly chargeable because after such approval by the court they did not dispose of the same, although it may have decreased in value. We think these two items are disposed of by the doctrine of res adjudicata. The decree, therefore, appealed from is reversed in so far as it charges the trustees with the amount of these two items as shown by the last accounting.

The decree is remitted to the Surrogate's Court for action in accordance with this opinion, with costs to all parties appearing and filing a brief on this appeal, to be paid out of the estate in the hands of the trustees. All concur.