In the Matter of the Estate of CATHERINE ALEXANDER, Deceased.

Surrogate's Court, Richmond County, July 16, 1934.

*Harold St. L. O'Dougherty,* for the petitioner.

*Hamilton & Freeman,* for the substituted trustee.

*Frederick W. Lahr,* special guardian.

SMITH, S. One Michael V. Dorney, the trustee of the trust created by the will of Catherine Alexander, deceased, began his management of the trust estate on April 17, 1917, accounted as trustee on July 17, 1927, and died on September 21, 1933. During his manage-

ment of said estate, he paid to the *cestui que* trust pursuant to the terms of the will upon her arrival at the age of thirty years the sum of $5,000 and upon her arrival at the age of thirty-five years, in July, 1927, an additional sum of $5,000, and his account at that time shows that he had on July 17, 1925, invested the sum of $2,000 in a guaranteed first mortgage title certificate of the Title and Mortgage Guarantee Company of Buffalo, and that on June 16, 1927, he had invested the sum of $1,200 in another like certificate of said company. A decree was made and entered in the accounting proceeding on July 17, 1927. The account filed by the executrix of the will of said deceased trustee shows that said trustee on January 3, 1930, invested the sum of $7,000, being substantially all of the remainder of said estate, in another like certificate of said company.

All of the certificates have been delivered to the substituted trustee, but he has filed an answer to the account in which he claims that under certain provisions of said certificates the same may be subject to a priority interest in favor of other holders of like certificates in contravention of the statutes authorizing investments by trustees, and requests the court to determine their legality.

The special guardian, in his report in said matter, calls the court's attention to the judicial analysis of the nature and character of like certificates by the Court of Appeals in *Matter of People (Tit. & Mtge. Guar. Co.)* (264 N. Y. 69, at p. 88), where it was stated that the primary obligation was that of the title company and that said company " transferred to the holder only an interest in the deposited mortgages as collateral security for its debt," and that the certificate " holder acquires, prior to default, no rights in the mortgages other or greater than the rights of a holder of collateral security," and said special guardian suggests that the estate of the deceased trustee be charged with the deficiency between the price paid and the present market value, for the reason that the purchase of said certificates by the deceased trustee was not wise or prudent.

No question has been raised as to the legality of these certificates as legal investments, other than the priority of other certificate holders and except that the special guardian's report which calls the court's attention to the judicial analysis of the Court of Appeals of like certificates in 264 New York, page 88, *supra,* might indicate that he is not positive that an investment in bonds and mortgages held only as collateral security was an investment permitted by the statutes.

The questions then to be necessarily answered are:

1. Were guaranteed first mortgage certificates of the Title and Mortgage Company of Buffalo an authorized investment for fiduciaries?

2. If a legal investment, does the provision in relation to payment to certificate holders in the order in which notices were received create a priority in behalf of owners of certificates who had given such notices?

3. If the investments by the trustee in such certificate were authorized by statute and there is no priority created by the certificates, were such investments wise or prudent?

As to the legality of the investments: section 111 of the Decedent Estate Law, as amended by chapter 544 of the Laws of 1918, provides that a trustee holding trust funds for investment may invest the same " in bonds and mortgages on unencumbered real property in this State worth fifty per centum more than the amount loaned thereon, and in shares or parts of such bonds and mortgages, provided that any share or part of such bond and mortgage so held shall not be subordinate to any other shares or parts thereof and shall not be subject to any prior interest therein."

The question of the legality of the investment, therefore, resolves itself into the question as to whether an investment in an obligation of a title company (as the same was held to be in *Matter of People* [*Tit. & Mtge. Guar. Co.*], *supra*), secured by bonds and mortgages, only pledged as collateral, is an investment in shares or parts of such bonds and mortgages as authorized by statute.

To invest means to place money or other property where it will yield an income or revenue (*Savings Bank of San Diego County v. Barrett*, 126 Cal. 413; 58 Pac. 914), and to invest funds in shares or parts of bonds and mortgages to yield an income would be accomplished by taking a certificate or obligation of a title company secured by collateral in the form of bonds and mortgages, the interest from which was to be paid to the holders of such certificates as stated therein.

Collateral security has been held to be a concurrent security for another debt, whether antecedent or newly created, and is designed ·to increase the means of the creditor to realize the principal which it is given to secure. It is subsidiary to the principal debt; *running parallel with it, collateral to it; and when collected is to go to the credit of the principal debt.* (Italics mine.) (21 R. C. L. 631.)

Therefore, the investments made by the deceased trustee in such certificates were not in contravention of the statutes, for the interest therefrom would be payable to the fiduciary and the principal when collected, as a matter of law, would go to the credit of the debt due the fiduciary.

Also that the Legislature held this in view when the 1918 amendment to section 111 of the Decedent Estate Law was passed to permit such investments, is evidenced by an opinion of the Attorney-

General to the Superintendent of Insurance on October 6, 1928 (Leg. Doc. No. 12, 1929, p. 211), which, after reciting the statutes, stated: " There are three situations which might be covered by the above quoted language: (1) Where there is but one mortgage against which participating certificates are issued (quite obviously permitted by the statute); (2) where there is a fixed group of mortgages which the title company has no power to change, and (3) where the title company may change or substitute the mortgages in any group.

" Counsel for one of the title companies have sent us able briefs in interpretation of the statute and upon the right of trustees to invest in not only form (1) but in forms (2) and (3) as well. We have been slow to be convinced, but have given way when shown that all three forms of mortgage participation certificates were in use before the statute authorizing trustees to invest in such certificates was passed. That is to say, there was presented before the Legislature an existing kind or kinds of investment in which other investors were placing their funds, and by the statute we have been discussing (Chap. 544, Laws of 1918), the Legislature apparently opened the same field to the trustee or fiduciary. Certain it is that the plan of grouping and substituting mortgages in any group was used as early as 1915 (Opinion of Attorney-General, May 1, 1915) and has been used ever since.

" For these reasons we believe the statute should now be construed to authorize the investment by trustee and fiduciaries in participation certificates in groups of mortgages, and in groups where the power of substitution is conferred."

No decision of any appellate court approving of an investment by a fiduciary in title company mortgage certificates has been called to my attention, except *Matter of Cady* (211 App. Div. 373, at p. 375), which in relation to investments by a trustee recited the Decedent Estate Law, the Personal Property Law and the Banking Law as authority for investments, but did not pass on the question of the validity of title company certificates. However, some of the Surrogates' Courts have considered such certificates and approved of investments made by fiduciaries therein. There are many decisions in the law reports in relation thereto, but none disapproved of such investments.

As to the question of priority of certificates as to which notice requiring payment had been given to the title company.

The certificates provide for the payment of the amount for which issued by the Title and Mortgage Guarantee Company ten years after the date of each certificate, and give to the holder the right to require payment after three years, " out of any moneys received

by the company in payment of the deposited bonds and mortgages after the receipt of such notice by the Company *and after the payment of any certificates of this issue in respect of which the Company shall previously have received notices requiring payment;* and the Company agrees to pay such principal and interest accordingly." "*All certificates shall be payable in the order in which such notices shall be received and registered by the Company.*"

It will be noted that such payments are to be paid only out of moneys received in payment of the bonds and mortgages assigned as collateral for the payment of the obligations of the title company. Necessarily such payments would cancel the certificates and in theory there would remain in any event at all times after such payments were made collateral fifty per cent greater in amount than the amount of the remaining certificates. The presumption would be that competent appraisals had been made of the value of the mortgaged parcels and that the titles thereto had been properly examined, found marketable and free from incumbrances and were guaranteed. Any payments made to certificate holders requiring payment would not be preferental, for such payments made in the regular order of the title company's business would not result in a diminution of the assets pledged for the payment of the other certificates. The sole question, therefore, is, would the certificate holders who had registered their requirement of payment, and had not been paid, have a priority over those who had not filed such notices, if the title company became, for any reason, unable to pay at maturity or insolvent before that time?

The Court of Appeals in *Matter of People* (264 N. Y. 69, *supra,* at p. 87) says: " When the guaranty company becomes insolvent or ceases to do business, a situation arises not provided for in its agreement with the holders of the certificates." And said court also said (at p. 92): " Each holder of a certificate is, under his contract, entitled to insist upon the enforcement of the bond, mortgages and other security in which he has an interest and to a *pro rata* share of the money collected." If the insolvency of the title company or its ceasing to do business creates a situation not provided for by such certificates and each certificate holder is entitled to a *pro rata* share of the moneys collected, it would follow that notices registered before the company became insolvent or ceased to do business would at such time become inoperative and of no effect, for payment could only be made from the moneys received from the deposited bonds and mortgages by said company during the time it was doing business and there was no provision for payment thereafter. Any payment made thereafter would result in a diminution of the distributable assets in all of which all of the

certificate holders would be equally interested, to the extent of their holdings, and any such payment would be in violation of the rights of the remaining certificate holders.

The investments of said trustee having, therefore, been made in authorized securities, the sole question remaining is whether he used ordinary prudence in making such investments.

The trustee is said to have been of the bar of this State, and if he was alive and testified in relation to the matter, it is to be presumed that he would say that he was conversant with the decisions of the surrogates who had approved of investments by fiduciaries in mortgage certificates; that such investments were guaranteed by the title companies, and produced a larger income than he could get in any other manner, and which the *cestui que* trust needed, and that he had frequently advised his clients that such investments were authorized investments for fiduciaries and that he approved of such investments personally.

As the trustee is dead and cannot explain the reason why such investments were made, it is the duty of the court to say from the fact that such investments were made whether said trustee exercised such prudence in making the same as in general a prudent man of discretion would exercise in his own affairs; whether he complied with the rule stated in *King* v. *Talbot* (40 N. Y. 76, 84, 85, and restated in *Matter of Clark*, 257 id. 132, at p. 136), " that the trustee is bound to employ such diligence and such prudence in the care and management, as in general, prudent men of discretion in such matters, employ in their own like affairs," but as also stated in *Matter of Clark* (*supra*). In determining whether the acts of a trustee have been prudent, within the meaning of the rule, we must " look at the facts as they exist at the time of their occurrence, not aided or enlightened by those which subsequently take place " (*Purdy* v. *Lynch*, 145 N. Y. 462, 475).

Looking at the facts that such investments were made, $2,000 in July, 1925, and $1,200 in June, 1927, both amounts too small to invest in individual mortgages and at times when the return from bonds authorized as an investment would have brought but a small return; and $7,000 in January, 1930, just after the stock market crash, when bond prices dropped and bonds appeared to be less secure than an investment secured by mortgages on land, the security eternal, what would be more natural as an act of a prudent man than an investment in what appeared to be a safe and sound security, authorized by law, guaranteed by what appeared to be a safe and sound institution and bringing in a larger income than could be realized from any other legal security. I, therefore, find that the investments by the said trustee were legal at the time when made

and that he used the prudence and discretion that he would have employed in his own affairs.

The attorney for the executrix of the will of the deceased trustee calls the court's attention to the fact that two of the investments were made before the accounting on July 17, 1927, and that the investments were fully set forth in such account, and that a decree was entered without any objections having been made to such investments. Such being the case, said trustee could not thereafter be charged with negligence in relation to any act of his which occurred at any time before the filing of said account. (*Matter of Roche*, 259 N. Y. 458; *Ungrich* v. *Ungrich*, 141 App. Div. 485.) But such trustee was not relieved from any further loss upon such investments, notwithstanding the prior decree. (*Matter of Bannin*, 142 App. Div. 436.) However, as the investments made by the deceased trustee were authorized by the statutes, were not subject to any priority and were such investments as a prudent man would make, the substituted trustee is directed to accept the same as a part of the trust estate and to exercise in their care, management, sale or collection such discretion as a prudent man would employ in his own like affairs.

Enter decree in accord with decision.