In the Matter of the Estate of GEORGINA NIX, an Incompetent Person.*

Supreme Court, New York County, December 20, 1934.

---

* See *contra*, *Matter of Stupack* (154 Misc. 759). See, also, *Matter of Alexander* (152 id. 354).

*Sidney A. Wolff,* for the committee, Harry J. Leffert.

*Edward Endelman,* special guardian.

*James A. Clark,* chief attorney of New York office of the Veterans Administration.

FRANKENTHALER, J. The special guardian has raised only one objection to the account, viz., in respect to a guaranteed participation certificate held by the committee and forming part of a series known as series F-1, issued by the New York Title and Mortgage Company. He maintains that this certificate is not a legal investment for trust funds, and that the committee should, therefore, be surcharged for the difference between $1,000, the face value of the certificate, and its present market value.

The certificate does not represent a share in any specific mortgage or mortgages. The F-1 issue is what is known as a " group issue." All the certificates of the issue are secured by a group of mortgages deposited with a trust company, each certificate constituting " an undivided coordinate share of the same amount in the principal sum secured by the bonds and mortgages or in the money secured " to the title company in the deposited bonds and mortgages. Each bond and mortgage, under the terms of the agreement between the title company and the depositary, was to be accompanied by a policy of title insurance insuring that the mortgage was a valid first lien for the amount therein specified, with interest, and also by a sworn certificate of an expert appraiser showing the appraised value of the property covered thereby, which was to be at least fifty per cent greater than the principal sum secured by the mortgage. The title company had the right from time to time to withdraw bonds and mortgages from the depositary upon substituting therefor other bonds and mortgages accompanied by similar documents and by certificates showing the same margin of safety. The title company guaranteed to the holders of the certificates payment of the principal sum thereby secured ten years after the first interest date specified therein. Each certificate, however, contained an additional provision permitting the holder, at any time after three years from the first interest date, on sixty days' notice, to compel the title company to pay the principal sum and interest " out of any moneys received by the Company in payment of the deposited bonds and mortgages." All certificates were to be payable in the order in which such notices were received and registered by the company.

The terms of the F-1 certificates and of the deposit agreement are very similar to those considered by the Court of Appeals in *Matter of People (Title & Mortgage Guarantee Co.)* (264 N. Y. 69), and

are identical with those referred to in a very recent opinion of this court (*Matter of New York Title & Mortgage Co.*, 153 Misc. 858).

There is serious doubt as to whether the F-1 certificate represents a legal investment for trust funds. In the first place, the statutes authorizing the investment of trust funds in mortgage participation certificates (Pers. Prop. Law, § 21; Dec. Est. Law, § 111) permit the investment of such funds in " shares or parts of * * * bonds and mortgages," but do not contain any language indicating that the words " shares or parts of * * * bonds and mortgages " are broad enough to include shares or parts of *group* bonds and mortgages in addition to shares or parts of single bonds and mortgages. The argument is made that the Legislature, had it intended to authorize investment in group mortgages, could easily have expressed that intention by adding the words, " or of groups of such bonds and mortgages."

A second ground for assailing the legality of the investment of trust funds in F-1 certificates is that the Court of Appeals has held that the holders of certificates similar to the F-1 certificates had not, by virtue of owning the certificates, become the owners of the underlying mortgages, but had acquired merely the rights of pledgees thereof. (*People* v. *Title & Mortgage Guarantee Co. of Buffalo, supra*, at p. 88.) The court said: " Though the certificate states that the company ' assigns to the registered holder hereof an undivided, coordinate share of the same amount in the principal sum secured by the bonds and mortgages deposited or which may hereafter be deposited by the company with the Marine Trust Company of Buffalo, * * * as depositary under the terms of an agreement bearing date June 10, 1927, subject to which this certificate is issued, together with interest thereon at the rate of $5\frac{1}{2}\%$ per annum ' an analysis of all the terms of the certificate, and of the contract, to which it is subject, discloses that the guaranty company has entered into an unconditional promise to pay, ten years from the date of the certificate, the principal sum secured and accrued interest and has transferred to the holder only an interest in the deposited mortgages as collateral security for its debt. Certainly the holder acquires, prior to default, no rights in the mortgages other or greater than the rights of a holder of collateral security and the guaranty company retains at least the rights of an owner who has cumbered his title with a lien. True the certificate provides that the guaranty company shall exercise these rights as ' agent ' for the holder of the certificate, but we construe the contract in accordance with its substance and effect, not with its form. So construed, the guaranty company is a

primary debtor, assigning the mortgages only as collateral security for the debt." The Circuit Court of Appeals for this circuit felt itself bound to follow the Court of Appeals of this State " regardless of our [its] own judgment " (*Prudential Ins. Co. of America* v. *Liberdar Holding Corp.*, Aug. 7, 1934, 72 F. [2d] 395, 396). " The company being the mortgagee of many mortgages on separate parcels of land, would deposit a number of them in a pool with a depositary. Against each pool it issued certificates of different amounts to investors, by which it purported to assign to the holder of the certificate an aliquot share in all the mortgages deposited in the pool, and ' guaranteed ' payment to him of the amount of his investment within ten years, together with interest meanwhile. We are freed from an independent analysis of the rights and obligations which resulted from these transactions, because the Court of Appeals of New York in *Van Schaick* v. *Title & Mortgage Guarantee Co.* (264 N. Y. 69) has settled them in a decision which we must treat as authoritative, regardless of our own judgment. The court there held that certificate holders had an interest in the assigned mortgages only as security for the direct obligation of the company to repay their advances; that in substance the situation was the same as though the company had borrowed money of the holders on notes, and pledged the pooled mortgages to secure them." In the light of the constructions thus placed upon the rights of holders of certificates in group issues, the special guardian vigorously maintains that such certificates are not within the scope of the statutes authorizing the investment of trust funds in shares or parts of bonds and mortgages.

Another basis for questioning the legality of an investment in F-1 certificates is that the provision permitting the title company to withdraw deposited bonds and mortgages and substitute others is one which the statutes permitting the investment of trust funds in mortgage participation certificates do not expressly authorize. And lastly, the legality of the investment is open to attack on the theory that the provision permitting certificate holders to be paid in the order in which they demand payment, after the expiration of three years, violates the statutory requirement that " any share or part of such bond and mortgage so held shall not be subordinate to any other shares or parts thereof and shall not be subject to any prior interest therein."

In a recent opinion (*Matter of Alexander* [Surr. Ct., Richmond Co.], 152 Misc. 354) Surrogate Smith considered two of these objections. He held that the fact that the holders of participation certificates in a group issue did not own the underlying bonds and mortgages, but were, according to the Court of

Appeals, merely pledgees thereof, did not affect their legality as investments for trust funds, taking the position that the word " investment " as used in the applicable statutes was not confined to *purchases* of shares or parts of bonds and mortgages, but was broad enough to include the lending of money on the security of pledges of shares or parts of such bonds and mortgages. The learned surrogate likewise held that the provision for the payment of certificates after three years in the order in which their holders demanded payment did not violate the statutory requirement " that any share or part of such bond and mortgage so held shall not be subordinate to any other shares or parts thereof and shall not be subject to any prior interest therein." This conclusion was based upon the theory that the word " subordinate," as used in the statutes, means subordinate *in lien*, and does not refer merely to the time of payment of the certificates. The correctness of this view is not at all free from doubt, in view of the fact that the statutes, in addition to providing that no share or part of such bonds and mortgages shall be " subordinate to any other shares or parts thereof," also provide that no share or part of such bonds and mortgages shall be " subject to any prior interest therein." It might well be argued that the word " subordinate " was intended to refer to priority in respect to term of payment, the words " and shall not be subject to any prior interest " sufficiently covering the question of priority of lien.

The other two possible objections, previously mentioned, to the legality of an investment in a certificate of series F-1 have, as far as this court is aware, never been the subject of adjudication by any court of this State. Plausible argument may be made for and against the view that the statutes authorize investments in shares or parts of *groups* of bonds and mortgages, although no specific reference is made therein to such groups. A similar observation is applicable to the legality of investments which permit the substitution by the title company of bonds and mortgages other than those originally securing the certificates, the question of the effect of the failure of the statute to expressly authorize investments with power of substitution being a close one which may well be decided either way.

The court believes it, however, to be unnecessary to determine the various questions thus presented. Guaranteed certificates of participation in group mortgages, with similar provisions for substitution and for payment to certificate holders on demand out of moneys received in payment of the deposited bonds and mortgages, have been in use in this State for more than a quarter of a century. They had been used for more than ten years prior to the enactment of the amendments to the Decedent Estate Law

 

and the Personal Property Law which permit investments by fiduciaries in shares or parts of bonds and mortgages (Laws of 1918, chap. 544). In view of the fact that participation certificates in group mortgages, with powers of substitution, had been in use for so long a period prior to the legislation referred to, the Attorney-General of the State of New York in 1928 (Opinions of Attorney-General, pp. 211, 212) rendered an opinion to the effect that the statutes in question authorize " the investment by trustees and fiduciaries in participation certificates in groups of mortgages, and in groups where the power of substitution is conferred." Subsequent to the date of this opinion, a number of amendments were made to section 21 of the Personal Property Law and to section 111 of the Decedent Estate Law, but none of them modified those parts of said statutes which permit the investment of trust funds in shares or parts of bonds and mortgages. In view of the fact that participation certificates similar to the one here involved were in use for a decade or more prior to the enactment of the statutes which authorize investments in shares or parts of bonds and mortgages, in view of the further fact that for many years such participation certificates have been generally regarded as legal investments for trust funds, especially after the opinion of the Attorney-General previously mentioned, and in view also of the Legislature's apparent acquiescence in this construction, this court is loathe to hold at this time that such certificates are not legal investments for trust funds. Trustees and other fiduciaries, including trust companies, corporations and individuals, have invested enormous sums in such certificates. They have been commonly regarded by the community at large as legal investments for trust funds. There has been what amounts to a practical construction of this statute for many years, and this practical construction is entitled to great weight. It is true that recent events have demonstrated the inadvisability of permitting fiduciaries to invest trust funds in participation certificates, particularly in certificates representing participations in groups of bonds and mortgages rather than in single bonds and mortgages. The wisdom of authorizing the investment of trust funds in such participation certificates is, however, a matter for the Legislature, and not for the court.

Although there is much to be said for the position taken by the special guardian in objecting to the committee's investment in the F-1 certificate, the objection is overruled for the reason previously indicated, and the motion to settle the committee's account and for further relief is granted. Settle order.